FLEETWOOD PRIDE, in Equity *vs.* PRIDE LUMBER COMPANY et als.

Aroostook.    Opinion November 12, 1912.

*Bill in Equity. Claims. Corporations. Collusion. Decree. Directors. Equity. Fraud. Meetings. Notice. Officers. Stockholders. Salaries.*

1. The allegations in a bill in equity brought by a minority stockholder against a corporation and a majority of the directors, who are also a majority of the stockholders, that the individual defendants corruptly and collusively conspired to convert the property of the corporation to their own use, in fraud of the corporation and in violation of their duty as directors, that they voted and paid themselves salaries greatly in excess of the value of their services, that, instead of paying the debts of the corporation they converted its funds to their own use, that the plaintiff is a creditor as well as a stockholder, that the individual defendants as majority stockholders control the stockholders' meetings, and manage and control the affairs of the corporation for their own benefit, so that the plaintiff is unable to obtain redress through the corporation, state a case appropriate for equitable relief.

2. In such a case, equity has jurisdiction, and will upon proper proof require the individual defendants to account to the corporation and to restore moneys wrongfully received by them.

3. In a bill in equity, brought according to the course of the common law, by a minority stockholder, who, is also a creditor, to compel directors to restore property and funds of the corporation wrongfully received by them, the court will not ordinarily take jurisdiction to determine the amount of the plaintiff's claim as creditor and order it paid.

4. But in such a case, if it appears that the defendants' breach of trust was wilful, and their conduct collusive and fraudulent, and subversive of the interests of the corporation, the court, if necessary for the protection of the rights of minority stockholders and creditors, and as incidental to the accounting, will not only require the offending directors to account, but will retain jurisdiction of the fund produced thereby, and appoint a receiver to administer it. And in that event, the court has jurisdiction to determine the amount of the plaintiff's claim, and order it to be paid out of the fund, first taking such measures as may be necessary to protect the rights of other creditors.

5. Directors of a corporation have no lawful power to vote salaries to themselves.

6. Directors having valid claims against a corporation cannot prefer themselves to other creditors, if there is not enough to pay all.

7. On appeal from a decree in equity all questions which appear in the record are open.

8. In the absence of statutory power, a court in equity has no jurisdiction to decree the dissolution of a corporation and the distribution of its assets, at the suit of one or more of the stockholders, and the same is true when there is statutory power, if the bill seeks relief only at common law.

In equity. On appeal by defendants. Bill sustained with costs on appeal. Decree in accordance with the opinion.

This is a bill in equity by a minority stockholder in the defendant corporation. The individual defendants, Henderson and Bradstreet, are the other stockholders. The bill alleges that the individual defendants corruptly and collusively conspired to wreck the corporation and convert its property to their own use as individuals in fraud of the corporation and in violation of their duties as directors; that they voted and paid to themselves salaries greatly in excess of the value of their services and have not devoted the funds of the corporation to the payment of debts of the corporation.

All of the defendants filed answers and the plaintiff filed the usual replications. This cause was heard on bill, answers and proof, and a decree filed sustaining the bill, from which decree the defendants appealed.

The case is stated in the opinion.

*Hersey & Barnes,* for plaintiff.

*Butler & Butler,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

SAVAGE, J.  The plaintiff is a minority stockholder in the defendant corporation.  The individual defendants, Henderson and Bradstreet are the other stockholders.  Each of the three owns one-third of the capital stock.  All are directors.  Henderson is president and Bradstreet is clerk and treasurer.  The corporation has ceased to do business as a going concern, and is practically defunct, but is not alleged to be insolvent.  The bill alleges that the individual defendants corruptly and collusively conspired to wreck the corporation, and to convert its property to their use as individuals, in fraud of the corporation and in violation of their duty as directors; that they voted and paid themselves salaries greatly in excess of the value of their services; that they have not devoted the funds of the corporation to the payment of debts; but, instead, have converted the funds to their own use; that the plaintiff is a creditor as well as a stockholder; that these defendants as majority stockholders control the stockholders' meetings and manage and control the affairs of the corporation for their own benefit, so that he is unable to obtain any redress through any action on the part of the corporation.  These allegations state a case cognizable in equity.  If true, the plaintiff as minority stockholder is entitled to pursue this remedy.  *Trask* v. *Chase,* 107 Maine, 137.

The prayer of the bill is that the individual defendants and the corporation be restrained from issuing and selling stock of the corporation; from paying Henderson and Bradstreet any salaries, and from expending any funds of the corporation; that Henderson and Bradstreet be ordered to make an accounting; that Henderson and Bradstreet be decreed to be trustees for the corporation in respect of all sums received by them for salaries which they voted to themselves; that they be ordered to restore to the corporation all amounts wrongfully withdrawn by them; that the debts of the corporation be ordered paid; and that a receiver be appointed to receive the property of the corporation, and to make disbursements as may be directed by the court.

The Justice who heard the case below granted a perpetual injunction against the defendant corporation from doing any further business; ordered Henderson and Bradstreet to restore to the treas-

ury of the corporation money withdrawn and paid to themselves in the way of salaries, decreed that the debts of the corporation should be paid; and appointed a receiver. From this decree the defendants appealed. Subsequently the Justice filed another decree containing the same matter as the first, with the addition that the receiver should pay the plaintiff the sum of $13,023.19, the same being the amount found due to him, and that the plaintiff's claim for salary, on one side, and the salaries claimed by Henderson and Bradstreet on the other, should be disallowed. Of the effect of this latter decree we will speak later.

It will be noticed that the plaintiff prays for relief of two entirely distinct kinds, (1) that the individual defendants account to the corporation, and restore moneys wrongfully received by them; (2) that the corporation be ordered to pay him what it owes him. To afford the first remedy, equity clearly has jurisdiction. To afford the latter, equity ordinarily will not take jurisdiction, except as incidental to strictly equitable relief.

I. *The accounting.* The single Justice made no specific finding of facts. But his conclusion necessarily involves certain findings, and such findings, unless clearly wrong, must be regarded as conclusive. The decree shows that he found that Henderson and Bradstreet had received moneys for salaries which they were not entitled to retain. We think the finding was right. Briefly stated, the situation was this. The plaintiff was engaged in the lumbering business, cutting, driving and sawing logs. He owned certain permits and contracts, certain logs that had been cut, certain statutory privileges on streams, a mill, teams, boilers and other things connected with the business. He was in debt. The Pride Lumber Company, a corporation, was organized in March 1908 to take over his business and property, and it did so. Henderson and Bradstreet paid the plaintiff certain money, and each received from him one-third of the entire capital stock. It was understood that the plaintiff was to be the business manager at a salary of $2,000 a year. The plaintiff claims that he worked at that salary for nearly a year. The defendants say it was a shorter time. But in March 1909 Henderson and Bradstreet, who were the majority directors, discharged him, and after that time seem to have conducted the business without any reference to him. He was not consulted,

and if there were any directors' meetings he was not notified and was not present. He claims that either purposely or negligently they allowed certain valuable permit rights to lapse. The last shipment of lumber was made in March, 1910. In October, 1910, the mill burned. Insurance to the amount of $20,000 was received. At that time the insurance money, with a small amount of other money, constituted the sole assets of the corporation, except some accounts which we infer were not very valuable, since they have not been collected, and a small amount of personal property. The corporation owed Bradstreet, the treasurer, on account of advances, $7,000. The only other creditor was the plaintiff, to whom was due something for salary and $2,447 admittedly due on account. Besides this the plaintiff had certain other claims on which something at least was due.

The defendants, Henderson and Bradstreet, then proceeded to administer the money on hand. Bradstreet was paid his $7,000. On January 2, 1911, at a directors' meeting of which the plaintiff, the remaining director, had no notice, and which he did not attend, they voted themselves salaries from April 1, 1908, as follows, Henderson, the president, for doing "all the labor necessary to carry on the business," at the rate of $200 a month; Bradstreet, treasurer, for personally furnishing "all the money to carry on the business, besides attending to other duties of his office," at the rate of $100 a month; Bradstreet also as clerk, $25 a month, and as secretary, $25 a month. Just what Mr. Bradstreet's duties as *secretary* were in addition to those as *clerk* is not stated. The date to which the payment of these salaries was continued does not appear in the printed record, but Mr. Henderson in his testimony says that the payment "practically" used up the $13,000 left of the insurance money after Bradstreet had been paid his $7,000.

The salary payments were unauthorized and unlawful for two reasons. One is that directors have no lawful power to vote salaries to themselves. *Camden Land Co.* v. *Lewis,* 101 Maine, 78, and cases cited. The other is that even if they have valid claims against the corporation which they are managing, directors have no right to prefer themselves to other creditors, if there is not enough to pay all. 10 Cyc., 803. And since it bears upon the propriety of appointing a receiver, we will add that the evidence leads us to

believe that the defendants' breach of trust was wilful, and their payment of salaries to themselves was collusive and fraudulent. The defendants, Henderson and Bradstreet, therefore, should repay the amounts received by them for salaries. But they claim that, if they are compelled to return their salaries, they should be allowed in this proceeding compensation for services actually rendered.

In the second decree filed by the Justice who heard the case, to which reference has already been made, he expressly disallowed the claims of all the parties for salaries. Since there is no dispute that they had all performed services, for which the corporation should pay them, there seems to have been no good reason for disallowing all the claims, except on the ground that in his judgment the amounts of the respective claims would offset one another. And as they were all the parties in interest, the result would be the same whether all claims were allowed, or all disallowed. It is not easy upon the evidence to determine satisfactorily, or even within quite broad limits, how much compensation the several parties were entitled to. But we think the conclusion apparently reached by the sitting Justice is fair and just, and should be adopted by us.

But it is contended that the second decree was unauthorized and void, in that, the first decree having been made and filed, and thus made operative, the Justice then had no jurisdiction to modify or enlarge it. *Parsons v. Stevens,* 107 Maine, 65. Let it be granted that this is so. Still, the case is before us on an appeal from the first decree, and on an appeal all questions which appear in the record are open. The case is heard anew upon the record, and such decree is directed as the whole record requires. R. S., chap. 79, section 22; *Trask v. Chase,* 107 Maine, 137. Accordingly all questions presented by the record are open for consideration, regardless of the second decree.

II.   It is objected that the court has no jurisdiction in equity to determine the amount of the plaintiff's claim in this proceeding, and to order it paid. It is true that it is not the province of equity to collect debts. It may be done under some circumstances, but there must be some equitable consideration to give jurisdiction. In creditors' bills against insolvent corporations, and in bills for the dissolution and winding up of corporations, the court necessarily has the power to determine claims against the corporation in order

that it may decree proper distribution of the proceeds of the sequestered assets. That is a part of its incidental jurisdiction. But this is not a creditors' bill. And although some of the prayers of the bill seem to contemplate a winding up of the affairs of the corporation so far as the payment of debts is concerned, we are here confronted again with a question of equitable power.

It is well settled that a court of equity, in the absence of statutory power, has no jurisdiction over corporations for the purpose of decreeing their dissolution and the distribution of their assets at the suit of one or more of the stockholders. 2 Cook on Corporations, sect. 629; 10 Cyc., 988.

We have a statute in this State which authorizes the court, under some circumstances, to wind up the affairs of a corporation and decree its dissolution, upon a bill in equity brought by a stockholder or creditor. Laws of 1905, Chapter 85, as amended by Laws of 1907, Chapter 137. And this case shows a state of facts which would have supported a bill brought under that statute. But it is manifest, upon examination of the present bill, that neither in allegation nor prayer, is it based upon that statute. It does not fit the statute. It does not ask for relief under the statute. It does not pray in general for a winding up of the affairs of the corporation, nor for its dissolution. The plaintiff therefore in this proceeding must obtain his personal relief upon common law principles, or not at all.

The weight of authority seems to be to the effect that courts of equity will not ordinarily take jurisdiction without statute authority to restrain the operations of corporations, or to wind up their concerns at the suit of a minority stockholder. 5 Thompson on Corporations, section 6842. Mr. Beach in his work on Receivers, at section 421, says:—"The courts of chancery in America . . . have usually, before their jurisdiction was enlarged by statute, declined to sequestrate the property of a corporation by means of a receiver, or to wind up its affairs." . . . "The winding up of the business and affairs of a corporation through a receiver has been said to be, in effect, a dissolution of the company, and, therefore, cannot be done by a court of equity without statutory authority. While the complete winding up of the affairs of corporation cannot be said to amount to its dissolution, yet it is going to an extremity which courts of equity have refused to approach; it destroys the means

afforded the corporation to transact business and virtually annihilates it, and puts the corporation out of existence." The power of the court, even in extreme cases, says the same author, "is not to be extended beyond preserving the assets. The court will take charge of the property until the trouble has been adjusted, when it must lift its hand and retire." To the same effect, see 10 Cyc., 989; also cases cited, Beach on Receivers, sect. 421.

There are indeed some instances found in the books where courts of equity have assumed to wind up the affairs of corporations at the suit of minority stockholders, on some such ground as that the object for which the company was formed is impossible of attainment, and the continuance of operations *must* be ruinous. *Benedict* v. *Columbus Construction Co.,* 49 N. J. Eq., 23.

But without winding up the affairs of the corporation, the court in equity may at the suit of a stockholder or creditor appoint a receiver, where corporate property has been abandoned and is exposed to certain injury or loss, or where the corporation has no officers to care for its property. Beach on Receivers, sect. 421; *Lawrence* v. *Insurance Co.,* 1 Paige, 587; or, where by the acts of the directors the corporate property is exposed to imminent peril. *Thompson* v. *Greeley,* 107 Mo., 557; or, where the directors have been guilty of a breach of trust, and the property is in danger of future injury and waste, unless withdrawn from the reach of danger. *Fougeray* v. *Cord,* 50 N. J. Eq., 185; 4 Thompson on Corporations, sect. 4545. And doubtless there may be other grounds. The case of *Fougeray* v. *Cord,* supra, is in many respects analagous to the case at bar, and the doctrine of that case justifies the appointment of a receiver in this one. The doctrine is founded on the breach of trust and fraud of the managing directors.

In this case we think we are without jurisdiction upon this bill to wind up the affairs of the corporation. Nevertheless, we think we may properly afford complete relief to the plaintiff. The corporation is out of business. It has no assets of importance. Such assets as it has in hand will go but a little way towards satisfying the plaintiff's claim. The court has jurisdiction of the fund which may be restored by these individual defendants, and such moneys as may come into the hands of the receiver. In some cases, particularly in the case of going concerns, the court would order the

fund paid into the treasury for the uses of the corporation. But in this case the corporation has no use for the fund except to pay the plaintiff's claim. And the collusive and fraudulent conduct of the managing directors has been such as to afford sufficient reason for not placing the fund again under their control. Under such circumstances, we think the court has incidental jurisdiction to administer the funds, without remitting the plaintiff to the remedy at law. To do this involves a determination of the amount of the plaintiff's claim. The case shows that the claim was not overestimated by the single Justice.

The decree appealed from will be affirmed with the following modifications. The provision for a perpetual injunction against the corporation will be omitted, as this is appropriate only to the winding up of a corporation. The defendants Henderson and Bradstreet will be ordered respectively to pay the amounts which they have received as salaries to the receiver instead of into the treasury. And as the case does not clearly show the date to which they received monthly salaries, the amount will be determined by the Justice who settles the decree. It will be adjudged that there is due to the plaintiff from the corporation over and above his claim for salary, the sum of $13,023.19, and interest thereon from April 10, 1912, the date of filing the first decree to the date of the final decree. It will be adjudged that the claims of the plaintiff, Henderson and Brandstreet for salaries are all disallowed. The bill will be retained for the purpose of enabling the court to determine if there be other creditors of the corporation, in order that they may be protected. If none, payment of the plaintiff's claim will be ordered out of the funds in the hands of the receiver. If there are other creditors, the fund will be distributed pro rata. If, after payment of claims, funds remain, they will be returned to the corporation.

*Bill sustained with costs on appeal.*
*Decree in accordance with the opinion.*