JOHN H. CONNERS, in Equity, *vs.* CONNERS BROS. COMPANY, et als.

Kennebec. Opinion May 12, 1913.

*Amendment.  Appeal.  Corporation.  Corruption.  Demand.  Equity.  Fraud.*
*Salaries.  Stockholders.  Trust.*

1. It is an elementary principle of equity jurisprudence that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience or good faith, or other equitable principle in his prior conduct, then the doors of the court will be shut against him in limine.

2. It is immaterial whether the payments made to Mr. Cutter were in accordance with approved business methods, was fraudulent in law or reprehensible in morals for the conclusion is irresistible that the payments were made with the knowledge and consent of the plaintiff.

3. A participant in injustice and wrong is not entitled to relief in a court in equity.

4. It is well settled law that the directors of a corporation cannot serve themselves and the corporation at the same time.

5. They have no authority to vote salaries to themselves, and if money has been paid on account of such votes, it may be recovered back.

On appeal by defendants, from decree of a single justice. Bill sustained with a single bill of costs as stated in the opinion. Decree in accordance with the opinion.

This is a bill in equity by a minority stockholder in the defendant corporation, in which he asks that an account of all transactions of Margaret V. Conners, Dennis E. Conners, and Edward F. Conners, as directors of said corporation, that an injunction, both temporary and permanent, be decreed restraining said corporation, its officers and agents, from recovering any moneys, paying any debts, or exercising any of its privileges or franchises, etc. These claims are based on the allegations of fraudulent acts of Dennis E. Conners and Edward F. Conners, acting as directors, in voting themselves salaries and in paying large sums of money to Olin W. Cutter and Frank E. Dunbar, for fraudulent purposes, without the knowledge, or consent of the plaintiff. Dennis E. Conners and Conners Brothers Company and Edward F. Conners filed answers and demurrers. Margaret V. Conners filed an answer, to which the usual replications were made.

The case is stated in the opinion.

*Newell & Skelton,* for plaintiff.

*F. W. & S. E. Qua, and Philbrook & Andrews,* for defendants.

SITTING: WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, BIRD, HANSON, JJ.

WHITEHOUSE, C. J. This bill in equity comes to the Law Court on appeal from the decree of a single justice entered in the cause.

The plaintiff is a minority stockholder in the defendant corporation which was engaged in the business of general contractors and construction engineers. The entire capital stock of the corporation was owned in equal shares by three brothers, the plaintiff, and the

defendants, Dennis E. Conners and Edward F. Conners. The corporation was organized under the laws of Maine, but its principal place of business is at Lowell, Mass., where all of the partners reside except the plaintiff, who now lives in Eliot, Maine. At the time of the acts complained of, the three brothers above named constituted the board of directors of the corporation; Dennis E. Conners was president, Edward F. Conners, Secretary and the plaintiff, John H. Conners, treasurer.

The plaintiff's amended bill contains eleven paragraphs, but the grounds of complaint relied upon by the plaintiff are found in the second, third and eleventh paragraphs.

It is alleged in substance in the second paragraph that in the fall of 1908 the defendants, Dennis E. and Edward F. Conners, without the knowledge of the plaintiff, while directors, fraudulently and corruptly paid to one Frank E. Dunbar, from the funds of the corporation, the sum of $10,000; that this money was paid to Dunbar for the purpose of inducing him to influence the commission having in charge the proposed alterations and repairs on the Suffolk County court house to award the contract to the defendant Conners Brothers Company, Dunbar being a lawyer and a relative of one of the commission; that the defendant company did not obtain the contract and received no benefit whatever from the money thus paid to Dunbar.

The third paragraph sets forth that at different times, without the knowledge of the plaintiff, the defendants Dennis E. and Edward F. Conners, acting as directors of the company, paid $25,000 to Olin W. Cutter, an architect, for the purpose of corruptly inducing him to use his influence to procure the contract for the building of the Oneida County court house in New York, and for the further purpose of inducing Cutter to alter the plans and specifications of the court house and cheapen the construction of the building and thereby secure to the defendant Conners large profits in fraud of the owners of the building and the defendant corporation.

The eleventh paragraph alleges that the defendants, Dennis E. and Edward F. Conners, acting as directors, "fraudulently and in breach of their trust duties, voted to themselves, to be paid from the funds of the corporation, for their services as president and secretary respectively, salaries largely in excess of their value."

The prayers of the bill are: First, that an account be ordered of all the transactions of the defendants, Dennis E. and Edward F. Conners, and that they be decreed to be trustees for the defendant corporation "for all sums which they might and ought to have reckoned or accounted for to the corporation; and second, that an injunction be decreed restraining the corporation from transacting any business until further order of court, and that a receiver may be appointed to wind up the affairs of the corporation.

The defendants, Dennis E. and Edward F. Conners and Conners Brothers Company, filed both demurrer and answer to the bill. Margaret V. Conners also filed an answer. After an examination of the causes for demurrer assigned with respect to the paragraphs in the plaintiff's bill above specified, it is the opinion of the court that the allegations relied upon by the plaintiff are sufficient to entitle him to relief under the first prayer in the bill, by virtue of the general equity powers of the court. *Smith* v. *Poor et als,* 40 Maine, 415; *Pride* v. *Pride Lumber Company,* 109 Maine, 452; (84 Atl. Rep. 989). The demurrer must therefore be overruled and the case examined upon the amended bill answer and proof.

In the answer to the complaint in the second paragraph of the bill, the defendants admit that the sum of $10,000 was paid by the corporation to Frank E. Dunbar for services rendered by him to the corporation, but deny that it was paid fraudulently or corruptly and that the corporation received no benefit therefrom, and aver that the payment was made with the full knowledge and approval of all the directors and stockholders, including the plaintiff himself.

Fraud and corruption are not to be presumed, but must be proved by clear and convincing evidence. With respect to this ground of complaint, the testimony not only fails to afford satisfactory proof that Dunbar was employed to aid in the accomplishment of a corrupt or fraudulent purpose, but does conclusively prove that whatever may have been the purpose for which his services were obtained, he was employed and paid with the knowledge, consent and approval of this plaintiff. It is unnecessary to consider whether the contract to pay Dunbar $10,000 was financially an advantageous one for the defendants or not. His services were rendered for the benefit of the corporation, and of each member of it, including the plaintiff,

who made no complaint in relation to this matter until the general estrangement and dissension arose between him and his brothers. He has no equitable cause for complaint on account of this transaction.

With reference to the allegations contained in the third paragraph of the bill it is said in the answer that Olin W. Cutter holds the note of the defendant corporation for $25,000, indorsed by all of the stockholders of the company including the plaintiff; that there has been paid on the note approximately the sum of $18,000; and that the note was given to Cutter by the corporation with the full knowledge, consent and approval of the plaintiff. But the defendants deny that the note was given by the defendants Dennis E. and Edward F. Conners, fraudulently, corruptly and in breach of their trust duty and deny that no benefit was received by the corporation from the payment of the money.

The defendants admit that at different times between 1906 and 1910, they paid to the architect Cutter sums aggregating $21,800. With respect to the origin and character of his business relations with the three Conners brothers who are parties to this suit, and the circumstances under which these payments were made, Mr. Cutter testifies that he first came in contact with them some years before they organized the defendant corporation in 1905; that they were then engaged in the trucking and coal business,—"rather an uncouth set, but hard-working fellows, very active and energetic;" that Dennis Conners asked him at one time if he would be willing to help him towards being a contractor, saying that he had an ambition that way and that he didn't want to be in the coal or teaming business all his life; that he agreed to assist them and thereupon gave them some information in regard to the business of contractors, taught them how to ascertain quantities and estimate the cost of construction and become qualified to figure on jobs and make intelligent bids for work; that he aided them to procure jobs and they soon became competent to make successful bids for the construction of some public buildings; but they seemed conscious of their deficiencies and limitations for want of technical training in any branch of construction and "pressed him a number of times to go into partnership with them" and he declined; but for the

apparent purpose of showing their gratitude for the past and insuring the continuance of his valuable aid in the future, they drew up an agreement stating that if they got established in business as successful contractors they would pay him $10,000, and the paper was signed "Conners Bros" and given to him; that finally in 1905 they obtained the contract for building the court house at Utica, N. Y., the successful completion of which gave assurance of a very large profit, and they again invited him to come into their firm, but he declined; that they then said they had a good contract and they wanted to increase that agreement from $10,000 to $25,000, and gave him a note for $25,000 and the old agreement for $10,000 was surrendered. This testimony of Mr. Cutter is corroborated by the plaintiff himself who admits he had knowledge of the agreement to pay $10,000, admits that subsequently the note for $25,000 was substituted for the $10,000 agreement and that he signed the note himself as surety with his brother Dennis, and also took the responsibility of signing upon it the name of his brother Edward, who was not present. But he says when he signed the note he understood that it was given for money borrowed of Cutter to use on the Utica job. He fails to state, however, that any funds from such a loan were deposited on the bank account of the defendant corporation at that time, or entered upon its cash book, although he was then treasurer having access to both. Later he says he understood that there was an exchange of notes of $25,000 each between Cutter and the defendants, but it appears from undisputed evidence that Cutter never gave the Conners Brothers Company a note for $25,000. Mr. Cutter frankly admits that the $25,000 note was not given for borrowed money and that there was no exchange of notes, and that the only consideration for the note was the assistance he had rendered Conners Bros. in obtaining contracts for them at different times. Mr. Cutter also testifies that the alterations noted on the plans for the Utica court house were made properly and legitimately, with the knowledge and approval of the authorities having in charge the erection of the building, for the purpose of bringing the cost of it within the limits of the appropriation; and that neither he, nor Dennis or Edward Conners received any money or any profit in consequence of any changes made in the plans for the building.

The defendant, Dennis Conners, testifies that the plaintiff knew all about the payments made to Cutter, except the last one made after the plaintiff left, and insists that Cutter's assistance to the company was worth $25,000. The defendant, Edward Conners, testifies that the plaintiff never made any objection to the payments made either to Cutter or Dunbar.

The plaintiff's claim that the note to Cutter for $25,000 was corruptly given for the purpose of obtaining the Utica contract, appears to be entirely without foundation, for the evidence shows that the work on the Utica court house was commenced in 1904, and the note was not given until 1905.

But a further discussion of the evidence relating to the precise nature and purpose of the financial transactions between Mr. Cutter and the Conners Brothers, can serve no useful purpose in the decision of this cause. It is immaterial whether the payments made to Mr. Cutter were in accordance with approved business methods, or were effective in promoting the financial success of the company. It is unnecessary to determine whether the purpose for which those payments were made was fraudulent in law or reprehensible in morals; for the conclusion from all of the evidence is irresistible that the contracts with Cutter, and the expenditures in pursuance of them, were made with the knowledge and consent of the plaintiff, and if the purpose of them was contrary to the dictates of conscience and good faith, the plaintiff was a participant in such injustice and wrong, and is not entitled to relief in a court of equity. For it is an elementary principle of equity jurisprudence that "whenever a party, who as actor seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience or good faith, or other equitable principle in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right or to award him any remedy." 1 Pom. Eq. Sec. 397. This fundamental conception of equity has been crystalized in the familiar maxim. "He who comes into a court of equity must come with clean hands."

The transactions in question cannot be deemed fraudulent as to this plaintiff.

But it is further complained that the defendants, Dennis E. and Edward F. Conners, voted to themselves for their services as presi-

dent and secretary, respectively, salaries largely in excess of their value. It appears from the records that at a directors' meeting held at the office of the company, March 24, 1909, at which were present only Dennis E. and Edward F. Conners with their attorney, a salary of $5000 was voted to Dennis E. Conners for his services as president, and the same amount voted to Edward F. Conners for his services as secretary.

It is of course well-settled law that the directors of a corporation cannot serve themselves and the corporation at the same time. They have no authority to vote salaries to themselves, and if money has been paid on account of such votes it may be recovered back. *Land Co.* v. *Lewis*, 101 Maine, 78 and cases cited; *Pride* v. *Lumber Co.,* 109 Maine, supra.

The plaintiff does not now contend that there are any grounds of complaint in the bill, other than the three above considered, on account of which he is entitled to equitable relief.

The conclusion is accordingly as follows: The bill is dismissed as to Margaret V. Conners. The bill is sustained with a single bill of costs as to the other defendants. The second paragraph of the decree appealed from, ordering the defendants, Dennis E. Conners and Edward F. Conners, to pay into the treasury of the corporation the sum of $25,000 paid by them to Mr. Cutter, and the sum of $10,000 paid by them to Mr. Dunbar, is reversed; and will be omitted from the new decree.

The third paragraph of the decree appealed from ordering the defendant, Dennis E. Conners, to pay into the treasury of the corporation all sums received for his salary as president in excess of two thousand dollars per year, with interest thereon, is affirmed and will be incorporated in the new decree.

The fourth paragraph of the decree appealed from, requiring the defendant, Edward F. Conners, to pay into the treasury of the company all sums received by him for his salary as secretary in excess of one thousand dollars per year, with interest thereon, is affirmed and will be incorporated in the new decree.

The single Justice who settles the decree will determine what sums, if any, have been received by the defendants, Dennis E. and Edward F. Conners, on account of the salaries so voted to them respectively, and when any such sums were drawn by them. The,

provision for the appointment of a master will be omitted from the new decree.

Inasmuch as the evidence does not present a case requiring or authorizing the appointment of a receiver, the provision in the decree appealed from, relating to a receiver, will be omitted from the new decree.

> *Bill sustained with a single bill of costs as stated in the opinion. Decree in accordance with the opinion.*