Chester HAMM

v.

William HAMM.

Supreme Judicial Court of Maine.

Argued Nov. 2, 1990.
Decided Dec. 31, 1990.

Joel Dearborn (orally), Ferris, Dearborn & Willey, Brewer, for appellant.

William B. Devoe (orally), Eaton, Peabody, Bradford & Veague, Bangor, for appellee.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

BRODY, Justice.

Chester Hamm appeals from a declaratory judgment entered in the Penobscot County Probate Court (*Woodcock, J.*) on his complaint challenging the administration of his deceased brother Alton's estate by his other brother William. Specifically, Chester contends that the court erred in refusing to impose a constructive trust in his favor on a certain parcel of real estate and in finding him responsible for the balance owing on a note. We vacate that part of the judgment dealing with the real estate and affirm the remainder of the judgment.

Alton Hamm died testate on March 14, 1986, and William Hamm was appointed personal representative of his estate. In his will, Alton provided that after payment of his just debts, funeral charges, and expenses of administration, the majority of his estate was to be distributed to his sister Mary Elizabeth and his brothers Chester and William. Because the assets of the estate were insufficient to pay the debts and expenses, William sought the authority of the court to sell the specific devises.

Among the parcels of real estate specifically devised by Alton was one located at 16 Katahdin Avenue, Millinocket, which was devised to Chester. Alton received a warranty deed for the property on December 30, 1983. The property was obtained in exchange for a camp owned by Chester on South Twin Lake and, by agreement between him and Alton, was conveyed by a third party directly to Alton. Chester managed the property, collected the income from it, and paid all of the bills, with Alton having no involvement with the property other than holding title to it in his name. Alton made his will devising the property to Chester about two weeks after the conveyance.

At the time of his death, Alton had outstanding debts of approximately $40,000. That amount included a balance of about $25,000 owing on an adjustable-rate promissory note that was executed by Alton on May 1, 1984, in favor of Northeast (now Fleet) Bank. The note was secured by a mortgage on real estate owned by Alton in Medway.

After William was appointed personal representative, a dispute arose between him and Chester. Chester alleged that the Katahdin Avenue property belonged to him free of the claims of creditors and the estate because Alton had held the property in constructive trust for him. William alleged that Chester was liable for the $25,000 mortgage debt because Alton had borrowed the money for Chester. As a result, Chester filed a complaint for a declaratory judgment pursuant to 14 M.R.S.A. § 5951 *et seq.* (1980 & Supp.1986) seeking to have

the court declare the rights of the parties on these two issues.

The court entered its judgment on May 18, 1990. In regard to the Katahdin Avenue property, the court specifically found as fact that the property was conveyed to Alton rather than Chester "to conceal it from Chester['s] ... wife or former wife."[1] The court then made the following conclusions of law:

1. There is no constructive trust herein for the reason that one should not be permitted to profit from the concealment of the property.

2. Chester L. Hamm is responsible to the estate for the fair rental of the property.

3. The property is not immune from being sold to pay debts, costs and expenses of administration.

As for the $25,000 loan, the court found that Alton had borrowed the money for Chester, who received all of the proceeds of the loan. The court made the following findings of fact:

1. Alton R. Hamm borrowed the money and endorsed the check over to Chester L. Hamm.

2. Chester L. Hamm deposited the check in a credit union account.

3. Chester L. Hamm made payments on the loan up to the time Alton R. Hamm died and he made no payments thereafter.

The court concluded that Chester owed Alton's estate "the current balance due on the mortgage, plus all payments made on the loan by the estate since Alton['s] ... death, as well as interest on all such payments."

■ On appeal, Chester argues that the court erred in concluding that the imposition of a constructive trust on the Katahdin Avenue property in his favor was precluded by virtue of the court's finding that he had concealed the property from his ex-wife. He argues that he breached no legal or equitable obligation to his ex-wife by concealing the property from her because she had no interest in the property. He contends that he is therefore entitled to have the Katahdin Avenue property conveyed to him free of the claims of creditors and the estate. We agree.

■ Relief in the form of a constructive trust is appropriate "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Ruebsamen v. Maddocks*, 340 A.2d 31, 38 (Me. 1975).[2] In refusing to impose a constructive trust because "one should not be permitted to profit from the concealment of the property," the court must have concluded that the imposition of a constructive trust was precluded on the facts of this case by the clean hands doctrine. The clean hands doctrine is crystallized in the maxim that one who comes into a court of equity must come with clean hands. *Conners v. Conners Bros. Co.*, 110 Me. 428, 434, 86 A. 843, 846 (1913).

[I]t is an elementary principle of equity jurisprudence that "whenever a party, who as actor seeks to set the judicial machinery in motion and obtain some remedy, *has violated conscience or good faith, or other equitable principle in his prior conduct*, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right or to award him any remedy."

and failure to do so would be a fraud, equity raises a constructive trust and declares that the grantee holds the property so impressed." *Austin v. Austin*, 135 Me. 155, 156, 191 A. 276, 277 (1937). In such a case, "if the transferee dies intestate without having repudiated his promise but intending always to perform it, his heir will be compelled to hold the property upon a constructive trust for the transferor." *Restatement of Restitution* § 182 comment c (1937).

---

1. The court's language notwithstanding, it is undisputed that Chester was not married on the date of the transaction in question. Chester and his wife were divorced on May 5, 1982.

2. It is clear that a constructive trust may be imposed even though a transferee of property did not breach his duty to reconvey it to the transferor. For example, "where real estate is conveyed upon the faith of the promise of a grantee to make a will devising it to the grantor

*Id.* (quoting 1 Pomeroy, *Equity Jurisprudence* § 397 (3d ed. 1905)) (emphasis added).

■ Application of the clean hands doctrine is within the sound discretion of the court. *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 815, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). "The touchstone of determining whether the [court] has properly exercised its discretion is whether in a given case that discretion is exercised 'in furtherance of justice.'" *Gagne v. Cianbro Corp.,* 431 A.2d 1313, 1318 (Me.1981) (quoting *Fitch v. Whaples,* 220 A.2d 170, 173 (Me.1966)). Where, as here, the evidence makes it "manifest that a plain and unmistakable injustice" has occurred, the court has abused its discretion. *Higgins v. Higgins,* 370 A.2d 670, 674 (Me.1977).

The fact that the court found that the Katahdin Avenue property was deeded directly to Alton to hold for Chester in order to conceal the transfer from Chester's ex-wife does not preclude the imposition of a constructive trust. The conclusion that such an act constituted misconduct on Chester's part depends upon whether his former wife had any interest in the South Twin Lake camp exchanged for the Katahdin Avenue property. The only evidence introduced at the hearing was to the effect that she had no such interest in the camp and thus no interest in the subject property. The parties' marital property had been divided by the divorce court long before the conveyance of the Katahdin Avenue property to Alton on December 30, 1983. Incorporated in the judgment of their divorce entered on May 5, 1982, was an agreement between Chester and his wife which provided that the "Husband shall have free and clear of the Wife's interest ... the camp located on South Twin Lake." Because Chester's ex-wife no longer had any interest in the camp property, she suffered no harm by Chester's alleged concealment of the property received in exchange for it. The court erred, therefore, in refusing to impose a constructive trust on the Katahdin Avenue property in favor of Chester.

■ In regard to the $25,000 mortgage loan, Chester challenges only the court's findings of fact in support of its conclusion that he is responsible for the outstanding balance owing on the note. We will not set aside findings of fact by the Probate Court unless they are clearly erroneous. *Estate of Tessier,* 468 A.2d 590, 593 (Me.1983). A factual determination is clearly erroneous only if there is "*no* competent evidence in the record to support [it]." *Solmitz v. Maine School Admin. Dist. No. 59,* 495 A.2d 812, 817 (Me.1985) (emphasis in original). Contrary to Chester's contention, our review of the record reveals that there was competent testimony by William, Mary Elizabeth, and the Hamm family's attorney to support the court's finding that the obligation was in fact Chester's. Accordingly, the court did not err in concluding that the $25,000 loan was the responsibility of Chester and not the estate.

The entry is:

Judgment regarding the title to the real estate vacated. Remanded to the Penobscot County Probate Court for entry of judgment ordering the personal representative of the estate to convey title to the Katahdin Avenue property to Chester Hamm free of the claims of creditors and the estate. The remainder of the judgment is affirmed.

All concurring.