STATE OF MAINE  
YORK, ss.

SUPERIOR COURT  
DOCKET NO. CV-13-304

P.B.K. ENTERPRISES, INC.,

      Plaintiff,

v.

**DECISION AND ORDER**

EDWARD HORVATH,  
LYNN VALACH, and  
UWANNAPIZZAME, INC.,

      Defendants/Third-Party Plaintiffs,

v.

PAMELA SLYE, and  
BRADFORD SLYE,

      Third-Party Defendants.

## I.    Background

This is a case about the sale of a pizza business. Plaintiff P.B.K. Enterprises, Inc. ("PBK") brought suit against defendant Edward Horvath ("Horvath"), Lynn Valach ("Valach"), and UwannaPizzaMe, Inc. alleging various claims arising out of the sale of Goody's Pizzeria ("Goody's") located at 7 Main Street in Gray. Defendants asserted

1

counterclaims to enforce a loan extended to the plaintiff by the defendants as part of the sale.

A trial was held in this matter on July 1, 2015. The court has received and considered the parties' written closing arguments and proposed findings of fact and conclusions of law. Considering the credible testimony, trial exhibits, stipulations and other evidence admitted at trial, the court makes the following findings.

PBK is a corporation with a place of business in Gray. Third-party defendants Pamela and Bradford Slye are individuals residing in New Gloucester. The Slyes own PBK. UwannaPizzaMe, Inc. is a corporation with a place of business in Yarmouth. Horvath and Valach are individuals residing in Yarmouth who own UwannaPizzaMe, Inc.

On October 28, 2012, PBK and UwannaPizzaMe, Inc. executed an asset purchase agreement ("the Agreement") that conveyed Goody's for $135,000. The Agreement was drafted by counsel for the Slyes and PBK. The sale included assets owned and used in conjunction with the business, including appliances and other fixtures and equipment. The Agreement granted PBK the right to operate the business in the space, which was rented from a third party.[1] PBK paid with $50,000 cash and a bank loan in the amount of $85,000.

Horvath and Valach also loaned PBK $10,000 with an interest rate of 5% pursuant to a separately executed note instrument ("the Note") that required monthly

_____

[1] The property in which Goody's Pizzeria operated was foreclosed upon after the parties closed on the sale of the business. A judgment of foreclosure and order of sale was issued by the Superior Court on December 20, 2012. This foreclosure is the subject of several of the plaintiff's claims and is discussed further below.

payments of $577.81. The Note provided that the full principle balance would be due June 15, 2014, after which time the interest rate would rise to 7%. The Note provided:

> If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

(Ex. 8.)

Once the Slyes began operating the business, they determined that various fixtures and items purchased from the defendants as part of the sale required service or replacement. It was also discovered that bank held a lien on some of the equipment. PBK made four payments of $577.81 before electing to cease making payments because of costs incurred repairing and replacing the equipment. The Agreement provided "The Equipment and all improvements are in good repair and good condition; ordinary wear and tear excepted, and to the best of Sellers' knowledge, are free from latent and patent defect." (Ex. 1.) The Slyes did not hire an inspector or appraiser to inspect the equipment prior to the sale. Instead, Bradford Slye, who has had a long career in the restaurant and food service business, inspected the equipment.

The parties executed a third document, a Non-Competition and Non-Solicitation Agreement ("the Non-Compete"), which was attached to the Agreement and drafted by counsel for the Slyes and PBK. Under the Non-Compete, Horvath was affirmatively permitted to operate a pizza business in Portland, Yarmouth, and Freeport. Valach was prohibited from operating, engaging in, or having an interest "in the pizza business within a twelve (12) mile radius of . . . Goody's." (Ex. 1B.) The Non-Compete had a term of three years. After executing the Non-Compete, Horvath opened a pizza business in

3

Yarmouth that has since closed. Valach opened a business called "Lynn's Café" in the same space as Horvath's pizza business.

## II. Discussion

### A. Breach of Contract

Whether a contract has been breached is a question of fact. *Cellar Dwellers, Inc. v. D'Alessio*, 2010 ME 32, ¶ 16, 993 A.2d 1. "It is a well established principle that a contract is to be interpreted to give effect to the intention of the parties as reflected in the written instrument, construed in respect to the subject matter, motive and purpose of making the agreement, and the object to be accomplished." *Coastal Ventures v. Alsham Plaza, LLC*, 2010 ME 63, ¶ 26, 1 A.3d 416 (citation omitted). Courts "interpret unambiguous contract language according to its plain and commonly accepted meaning." *Seashore Performing Arts Ctr. v. Town of Old Orchard Beach*, 676 A.2d 482, 486 (Me. 1996). Ambiguous contract language is construed against the drafter. *Barrett v. McDonald Invs., Inc.*, 2005 ME 43, ¶ 36, 870 A.2d 146.

Plaintiff alleges that by operating a café in the same location with Horvath's new pizza business in Yarmouth, Valach breached the Non-Compete agreement. The Non-Compete prohibited Valach from operating, engaging in, or having an interest "in the pizza business within a twelve (12) mile radius of . . . Goody's." (Ex. 1B.) The Non-Compete does not define "pizza business."

Lynn's Café serves breakfast food. No pizza is served. The court finds that Lynn's Café is not a "pizza business" and the mere fact the café was operated in the same building as Horvath's pizza business does not transform a breakfast business into a pizza

business. To the extent the term "pizza business" is ambiguous, it must be construed against the drafter, in this case, the plaintiff. Valach's café did not breach the Non-Compete.

### B. Breach of Warranty

As codified in Maine, the Uniform Commercial Code ("UCC") "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 11 M.R.S. § 2-313(1)(a).

Plaintiff alleges breach of warranty on two separate grounds: first, that the equipment was not in the condition that the defendants warranted; second, that pending foreclosures upon the real estate and the equipment breached the warranty that there were no pending or threatened legal proceedings.

The Agreement contained a warranty regarding the equipment, which provided "The Equipment and all improvements are in good repair and good condition; ordinary wear and tear excepted, and to the best of Sellers' knowledge, are free from latent and patent defect." (Ex. 2.) Bradford Slye is a sophisticated buyer with experience in the restaurant business. The plaintiff had ample opportunity to inspect the equipment before finalizing the sale. The plaintiff received what they bargained for and to the extent equipment had to be replaced, this was a result of wear and tear of old equipment that had been used for many years, which the Agreement expressly excepts from the warranty. The breach of warranty as to the equipment fails.

The second relevant warranty in the Agreement provided that there were "not pending or, to Sellers' knowledge, threatened proceeding (i) by or against Sellers tor that

otherwise relates to or may affect the business of, or any of the assets owned or used by, Seller; or (ii) that challenges, or that may have the effect of preventing, delaying, making illegal or otherwise interfering with, any of the Contemplated Transactions; or (iii) that might result, either individually or in the aggregate, in a material adverse effect on Sellers, its business or the Assets." (Ex. 1.)

The plaintiff failed to prove that the foreclosure on the property or the liens on the equipment had any negative impact on the business or caused them damages. The defendants did not sell the property; only the right to continue to rent and operate the pizza business in the space. The foreclosure judgment on the property occurred in December 2012, several months after the Agreement in October 2012. There was no evidence defendants had notice of the impending foreclosure. As to the UCC liens, the plaintiff failed to establish what, if any, of the equipment is encumbered such that the plaintiff's interest is impaired. This breach of warranty claim also fails.

### C. Fraud and Negligent Misrepresentation

An individual may be found liable for fraud where he or she:

(1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 53 (Me. 1996). Negligent misrepresentation requires the plaintiff prove the following:

One who, in the course of his business, profession or employment or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary losses caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating information.

6

*Id.*

Both the fraud and negligent misrepresentation claims turn on the plaintiff's contention that defendants falsely represented that the equipment sold was in good condition. The court finds there was no intent to defraud and in fact, the defendants made no false representations. The plaintiff received what was bargained for and the true condition of the equipment was either known or discoverable by the plaintiff before consummating the sale. The fraud claims fail.

## D. The Defendant and Third Party's Claim Under $10,000 Note

The defendants counterclaimed for the amount due and owing under the $10,000 Note provided as part of the sale. Defendants request a total of $9,032.07 in unpaid principal and interest. There is no dispute that Horvath and Valach loaned the Slyes the money pursuant to a valid contract; the plaintiff instead argues the Note is unenforceable because the defendants have unclean hands.

The clean hands doctrine is an equitable doctrine that serves to deny relief to a party whose conduct violates the conscience or good faith. *Hamm v. Hamm*, 584 A.2d 59, 62 (Me. 1990). "Application of the clean hands doctrine is within the sound discretion of the court." *Id.* Based on the conclusions reached above, the defendants did not defraud the plaintiffs or breach any warranty as part of the Agreement. The plaintiff's defense fails. The defendants are entitled to judgment in the amount of $9,032.07.

## E. Attorney's Fees

The defendants also request attorney's fees pursuant to Section III of the Note, which provides that failure to meet a payment obligation requires the borrower "pay all costs of collection, including reasonable attorney fees." (Ex. 8.) The court concludes that

the defendants are entitled to reasonable attorney's fees incurred in collecting on the Note. Courts consider the following factors in determining an appropriate fee award:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Poussard v. Commercial Credit Plan, Inc.*, 479 A.2d 881, 884 (Me. 1984).

The defendants request fees in the amount of $19,217.92, including $17,093.00 in attorney's fees and $2,124.92 in costs. These fees and costs include not only the cost of collecting on the Note, but also the costs associated with defending this suit. Although the plaintiff did not ultimately prevail, the court finds the plaintiff's claims had a plausible basis and were brought in good faith. Based on the plain language contained in the Note agreement, the court declines to award fees above and beyond those necessarily expended to collect the debt.

While the court is mindful that the time and labor devoted to discrete issues or claims in a case are often intertwined with other aspects of the litigation, *Poussard*, 479 A.2d at 885, the defendants have the burden to demonstrate the reasonableness of a requested award. There is presently no affidavit or other document in the record from which the court can discern the hours expended in preparing and pursuing the counterclaim.

8

**Conclusion**

In light of the foregoing, the defendants are entitled to judgment on all counts. The clerk will make the following entry, by reference, on the docket pursuant to Rule 79(a):

> Judgment for the defendants as to Counts I (Breach of Contract), II (Breach of Warranty: Equipment), III (Breach of Warranty: Foreclosure), IV (Fraudulent Misrepresentation: Equipment), V (Fraudulent Misrepresentation: Foreclosure), and VI (Negligent Misrepresentation). Judgment to the defendants as to Count I of the counterclaim to enforce the Note. Judgment shall enter as to Count II for attorney's fees in an amount to be determined upon the defendants demonstrating to the satisfaction of the court the reasonableness of the requested fees. The defendants may file a memorandum and affidavit detailing and justifying the fees related only to preparation and pursuit of the counterclaim to enforce and collect under the Note within 21 days. Plaintiffs may file an opposing memorandum and affidavit within 14 days of receipt of Defendant's fee submissions.

SO ORDERED.

DATE: September 2̸8̸, 2015

_____
John O'Neil, Jr.
Justice, Superior Court

PORSC-CV-2013-304

ATTORNEY FOR PLAINTIFF:
BENJAMIN CAMPO, ESQ. (AND 3RD PARTY DEF)
DOUGLAS MCDANIEL CAMPO & SCHOOLS LLC PA
90 BRIDGE STREET
WESTBROOK, ME 04092

ATTORNEY FOR DEFENDANTS:
MICHAEL SMITH, ESQ.
GREGORY HANSEL, ESQ.
PRETI FLAHERTY BELIVEAU & PACHIOS LLP
ONE CITY CENTER
PO BOX 9546
PORTLAND, ME 04112-9546