JENNIE A. ROWELL, in equity, *vs.* HENRY S. JEWETT.

Somerset. Opinion March 28, 1879.

*Married woman. Condition subsequent,—breach of. Waiver. Re-entry for breach of condition. Forfeiture,—relief against. Parties. Equity.*

D M and wife bought a farm, paid for it in part and had it conveyed to the wife and son F M, who gave their joint promissory notes secured by their joint mortgage of the farm, for the balance of the purchase money. Thereupon the wife conveyed her half to the son, by deed conditioned that he would support his father and mother comfortably through life; pay $100 to each of his two sisters when married; and pay off the mortgage and save harmless D M and wife (father and mother) therefrom. In equity, *Held*: (1.) That the wife's half of the farm was bound by the mortgage, though she might not be personally liable on her note. (2.) That the son (F M) was bound to relieve the property from the mortgage within a reasonable time; and suffering the last note to remain unpaid for four years after maturity is a breach of the third condition. (3.) That to save the second condition, he should have paid or tendered to the daughters the sums specified within a reasonable time after notice of their marriage. (4.) That the daughters could not waive a tender of performance; and a demand was not necessary. (5.) That F M's unfilial and undutiful treatment of both of his parents was a breach of the first condition. And (6.) That the first condition did not require the beneficiaries to receive their support on the farm, but gave them the right to select their place of residence within reasonable limits as to distance and cost.

A grantor's formal re-entry, in the presence of two witnesses, upon land conveyed on condition of the comfortable support of the grantor, for non-performance, accompanied by a statement to the grantee that he had wholly neglected to support the grantor, is sufficient to revest the estate in her; and such an entry upon one parcel of land embraced in the deed may be sufficient to embrace the whole.

This court sitting in equity can relieve against a forfeiture of land for con-

dition broken, when the proper sum to be paid is susceptible of definite calculation, and the breach was not gross and wilful.

In a bill in equity to redeem a mortgage, one apparently having an equitable interest in the premises liable to be affected by the decree for redemption should be made a party.

BILL IN EQUITY, heard on bill, answer and proof.

On August 21, 1865, David Mitchell and his wife Eliza Mitchell, purchased a farm together with forty-four acres of other land of Scamman Burrill for $4,000, and paid down $2,130. The premises were conveyed to Eliza Mitchell and Fifield Mitchell, the youngest son of David and Eliza. At the same time Eliza and Fifield gave to Burrill their four joint promissory notes for $1,970, balance of purchase money, and secured the payment thereof by their joint mortgage of the premises. At the same time, Eliza Mitchell (her husband David joining in the deed) by deed of warranty conveyed her half of the premises to Fifield, for the nominal consideration of $1,000, upon the conditions following :

" That if the said Fifield Mitchell shall support the said David Mitchell and Eliza Mitchell during their and each of their natural lives in a comfortable manner, in sickness and in health, and furnish them good and decent clothing, in summer and in winter, good and sufficient house room and fire-wood, and also furnish them with a horse and wagon and harness, to visit their friends and to attend church, and to furnish everything necessary for their support and comfort suited to persons of their age and condition in life, (with this proviso, that whatever labor said David Mitchell shall perform shall be turned in for the support of himself and wife) and pay one hundred dollars each to Zilpha and Amanda Jane when they are married, and save said David Mitchell and Eliza Mitchell harmless from four notes by them signed with me this day, payable to Scamman Burrill, for nineteen hundred and seventy dollars, then this deed to remain in full force and virtue, otherwise to be void and of no effect."

There was evidence tending to show that Fifield grossly maltreated both his father and mother, especially the latter; that said David Mitchell died May 24, 1873 ; that Eliza Mitchell, on

account of the maltreatment from Fifield, went to live with her son Frank, at Skowhegan, thirteen miles from the farm, on September 4, 1873, having previously notified Fifield of her intention to do so, and requested him to make provisions for her support there, which he refused to do.

On November 19, 1873, Eliza Mitchell went to the house on the farm, in the presence of two witnesses, and then and there informed Fifield that she had come to make an entry upon the property for breach of the conditions of her deed to him; that he had refused to support both her husband and herself while living on the farm and at Skowhegan; that he had not paid the Burrill notes; and had not paid Zilpha who was married in May, 1873.

It also appeared that Fifield was notified of the marriage of Zilpha; that he did not offer to pay her during a five weeks visit at his house; that after she left he wrote to her saying he would pay her if she would send him a receipt; that she replied she could not send the receipt until she received the money which would be very acceptable.

It also appeared that, on July 19, 1873, just before Eliza Mitchell left the farm to live with her son Frank, at Skowhegan, she made a written demand on Fifield for certain groceries and cloth and received from him the articles, amounting to the sum of $25.

It also appeared that on March 15, 1870, the defendant took an assignment of the Burrill mortgage and last note of $470 and interest; that on April 2, 1872, the defendant advanced to Fifield $485 for which he took his note secured by a second mortgage on the farm, and that on August 31, 1871, Fifield gave to the defendant a quitclaim deed of his interest in the farm taking back an unsealed written agreement, of the same date, to reconvey the premises on payment, within six months, of certain sums therein specified. In connection with this agreement, Jewett (defendant) testified that as the time expired, he told Fifield " to go to work and keep the farm up and he would wait upon him and give him a chance," etc.

It also appeared that Eliza Mitchell devised her interest to the

plaintiff; that she died August 10, 1874; that her will was duly probated and the plaintiff appointed and qualified as executrix thereof in February, 1875.

No question was made in relation to demand and tender.

The remaining facts appear in the opinion.

*D. D. Stewart,* for the plaintiff, submitted an exhaustive brief.

*J. Baker,* for the defendant, elaborately argued the following propositions:

I. The father died and paid nothing, and so no breach as to him.

II. The mother being a married woman, and her note being made before Stat. 1866, c. 52, took effect, she was never liable thereon. *Bryant* v. *Merrill,* 55 Maine, 515. *Mayo* v. *Hutchinson,* 57 Maine, 546. *Lee* v. *Lanahan,* 59 Maine, 478. But if liable she died without having paid anything, hence father and mother were held harmless.

III. Zilpha declined to send a receipt and never demanded the money.

IV. The mother lived on the farm eight years; never claimed any forfeiture or ceased to receive support from Fifield under the contract, thus recognizing it as subsisting; and every time she received supplies she waived any past deficiencies. Demanding and receiving supplies in July, 1873, was a distinct recognition of the contract to support and a waiver of all prior breaches. *Hooper* v. *Cummings,* 45 Maine, 369. *Andrews* v. *Senter,* 32 Maine, 394. *Sharon Iron Co.* v. *Erie,* 41 Penn. St. 341.

V. The facts show that the support was to be furnished on the farm; relationship of the parties and the language of the deed, " good and sufficient house room," " horse, wagon and harness," all tend the same way.

VI. Full performance was tendered " anywhere " before expenses were incurred for her support at Skowhegan.

VII. Re-entry not sufficient.

VIII. If sufficient, the case should be sent to a master to determine what sum will compensate for the breach and save the for-

feiture of the whole estate; or that an issue be made up, *quantum damnificatus*, to be tried by a jury.

IX. Equity and justice should be done both parties. The court has full equity powers (Stat. 1874, c. 175,) and may send the case to a master or jury to ascertain the damages. *Frost* v. *Butler*, 7 Maine, 225–31. Smith's Laws of Maine, c. 50, § 2 and note. *Jenks* v. *Walton*, 64 Maine, 97. *Atkins* v. *Chilson*, 11 Met. 112. *Stone* v. *Ellis*, 9 Cush. 95. *Steel* v. *Steel*, 4 Allen, 417. *Gibson* v. *Taylor*, 6 Gray, 310. Story's Eq., §§ 1315, 1319, 1320, 1326 *a* and notes. *Henry* v. *Tupper*, 29 Vt. 358. *Austin* v. *Austin*, 9 Vt. 420. *Hill* v. *Barclay*, 18 Vesey, 56. *Dunkler* v. *Adams*, 20 Vt. 421.

X. A pecuniary consideration can be made for any supposed breach of the conditions. Neither father nor mother has paid anything on the mortgage. One hundred dollars and interest to Zilpha. On the condition for support; the father died without complaint or expense—the mother had her support for eight years on the farm and then left, and the court may possibly find that there was some expense which Fifield ought to pay. The amount of that expense is easily ascertainable. The breach was not " gross, wilful and inequitable." *Jenks* v. *Walton, supra.*

BARROWS, J. The transactions out of which this suit has arisen are mostly stated in the report of the case of *Rowell* v. *Mitchell* 68 Maine, 21.

That was a suit at law, originally brought by Eliza Mitchell, the mother of the plaintiff, and after her death prosecuted by the plaintiff as her devisee, for the possession of an undivided half of a certain farm, against this defendant and Fifield Mitchell, who was originally a tenant in common with Eliza, of the said farm, which the plaintiff here seeks to redeem from their joint mortgage given to Scamman Burrill, and now held by the defendant.

The plaintiff was non-suited in that action, upon the ground that even assuming that she, as Eliza's devisee, had established as against Fifield Mitchell her right to recover an undivided half of the farm, by reason of the forfeiture of his estate under Eliza's conditional deed of that half to him, and though he might be precluded by the pleadings from setting up his tenancy under Jewett as a

defense, still she could not maintain her action at law for the possession against this defendant Jewett, who had, as against her, the rights of a mortgagee against a mortgagor, nor against his tenant.

The effect of this view of the case was to leave it undetermined as between the plaintiff and Fifield Mitchell, whether she had the right to redeem which originally belonged to Eliza Mitchell as owner of an undivided half of the farm mortgaged, or whether it still belonged to said Fifield under the conditional deed to him from Eliza.

Subject to the mortgage here sought to be redeemed, Fifield Mitchell, April 2, 1870, mortgaged an undivided half the farm to the defendant, to secure a promissory note of that date, for $485, payable in two years, with interest at 6 per cent for the first year, and 9 per cent for the second and thereafterwards until paid ; and afterwards, August 31, 1871, while in possession of the whole farm, quitclaimed his interest in the same to said defendant, taking back an agreement of the same date signed by the defendant, but not (so far as appears) under seal, and never recorded, to give said Fifield a quitclaim deed of the interest thus conveyed to him by said Fifield, if he should pay to the defendant within six months the sum of two hundred and fifteen dollars, with interest at 8 per cent until paid, and also pay the aforesaid note secured by mortgage at maturity. It does not appear that he has done either.

In this condition of things this bill in equity for redemption from the mortgage given by Eliza and Fifield Mitchell, is brought against Jewett, and the case is presented on bill, answer and proof consisting mainly of the evidence given at the trial of the before mentioned suit at law, used here by agreement of parties.

Whether the plaintiff has a right of redemption from this mortgage depends on the proof of a breach of one or more of the conditions in the conditional deed from her mother to Fifield Mitchell, and a re-entry to claim a forfeiture by reason of such breach.

We think the evidence clearly shows a breach of more than one of the conditions, if not of all.

Touching the condition to save David and Eliza Mitchell harmless from the Burrill notes, the respondent argues that it was per-

formed because David in his lifetime was not called upon to pay anything on them, and Eliza being a married woman was not liable, because they were given before the statute of 1866, c. 52.

But Eliza's half of the farm was bound by her mortgage for the payment of the notes, though she might not be personally liable thereon. *Brookings* v. *White*, 49 Maine, 479.

We cannot regard it as a fulfillment of that condition to suffer one of the notes to remain unpaid so many years after it became due, accumulating interest which must be paid out of her property in case a breach of the other conditions of her deed to Fifield made it necessary for her to re-enter to procure the means of support, or to pay the marriage portion of the daughters. The condition substantially required Fifield Mitchell to relieve the property from the incumbrance of the mortgage within a reasonable time. *Ross* v. *Tremaine*, 2 Met. 495. *Fiske* v. *Chandler*, 30 Maine, 82. *Hayden* v. *Stoughton*, 5 Pick. 534.

And that condition was not and never has been performed.

The condition for the payment of the marriage portions to the daughters made it the duty of Fifield Mitchell (if he would save it) to pay or tender the sums specified within a reasonable time after being notified of their marriage.

There is no satisfactory proof that Zilpha ever intended to waive the payment to her. But if there had been, nothing short of a tender and refusal of the $100 could be regarded as a performance on the part of Fifield Mitchell.

Though Zilpha was pecuniarily interested in the condition, she had no such legal interest in it as would enable her to waive a tender of performance. *Gray* v. *Blanchard*, 8 Pick. 290–292.

The condition was one which it was competent for David and Eliza Mitchell to make in their conveyance, and they were the only parties who could absolutely and entirely dispense with it. It cannot be said upon the testimony here that Zilpha in any way refused the money, for it was never tendered, or that she hindered or obstructed the performance of the condition. It was not necessary for her or any one else to demand it. *Whitten* v. *Whitten*, 38 N. H. 127. Nor can silence be construed into a waiver. *Gray* v. *Blanchard*, *ubi supra*. This condition also was broken.

While upon some points the testimony touching the performance of the condition for the support of David and Eliza Mitchell is conflicting, an examination of it satisfies us that Fifield Mitchell broke this condition also, in more ways than one: firstly, by the unfilial and undutiful treatment of both his parents, and a cold neglect that was the reverse of the comfortable support stipulated for, and which would have amounted to a breach, even if the condition could be construed as one requiring them to receive their support on the farm. It cannot be so construed, and gave the beneficiaries the right to select their place of residence, within reasonable limits as to cost and distance. *Wilder* v. *Whittemore*, 15 Mass. 262. *Thayer* v. *Richards*, 19 Pick. 398. *Pettee* v. *Case*, 2 Allen, 546.

It is urged that Eliza Mitchell waived all past breaches by calling for and receiving some small supplies in July, 1873, a few weeks before she finally left and went to live with another son a few miles distant, with whom she remained until her death. We do not think that a course of neglect and unkindness, persisted in until the heart of a mother is alienated from her son to the point of leaving him and taking refuge elsewhere, should be regarded as in any part condoned by the fact that, while the process of alienation was going on, the mother received some of the supplies which it was the duty of the son not merely to furnish, but to accompany with the kindness which civilization is apt to teach even coarse and brutal men to manifest to their parents. The testimony of Lowell Wheeler and others indicates a course of vulgar and profane abuse, of such a description that it is no wonder the mother should declare that she had rather call upon the town than on such a son to supply her wants.

It is not every case of reception of portions of what is due under the contract that will amount to a waiver. *Frost* v. *Butler*, 7 Maine, 225. And if the position of the defendant on this point could be sustained, there would still remain a breach by reason of the refusal and neglect to provide for the support of the mother, with her other son, in addition to the other breaches previously noticed.

We are satisfied that Eliza Mitchell had good grounds for

re-entering, and claiming a forfeiture under the conditional deed as she did. What she did and said to Fifield Mitchell at that time was sufficient for that purpose. The entry seems to have been for the whole, though made on only one of the parcels embraced in the conditional deed. Stearns Real Act., 42, 43, §§ 17, 18. *Hawkes* v. *Brigham*, 16 Gray, 565, and cases cited. *Jenks* v. *Walton*, 64 Maine, 97.

The defendants' counsel urges that in lieu of the forfeiture which the mother claimed, there should be a decree for pecuniary compensation to be made for the loss and expense growing out of the breach of the conditions by Fifield Mitchell. With the full equity powers that the court now has under Stat. 1874, c. 175, doubtless it can relieve against such forfeitures where the proper sum to be paid is susceptible of definite calculation, and the breach was not gross nor wilful.

The pecuniary equivalent for some of the breaches might be readily calculated, but this cannot be said in respect to the profane abuse and heartless neglect which embittered the declining years of David and Eliza Mitchell, and at last induced the mother to claim a forfeiture against her son. There is nothing in the evidence before us which should lead us to intervene to protect Fifield Mitchell or his grantee against the legal consequences of his unfilial conduct.

We think the plaintiff has established her title to an undivided half of the mortgaged premises, and, this settled, her right to redeem from the mortgage is not controverted.

Out of the peculiar relation in which this respondent stands as respects the title, two questions of practical importance arise, which remain to be determined.

The mortgage on which the respondent in the outset advanced his money, and which the complainant seeks to redeem, covers the undivided half of the farm originally belonging to Fifield Mitchell, as well as that which belongs to the complainant. Relying upon a subsequent quitclaim deed from Fifield Mitchell, the respondent has advanced other sums besides those due on the mortgage.

The respondent's security upon Fifield's half ought not to be disturbed. When the complainant has a decree for redemption, what shall be its terms?

The complainant asks that the respondent may be ordered, upon payment of what may be found due him, to assign and deliver the mortgage and note to her, or to release to her all his right, title and interest, under and by virtue thereof, which amounts to the same thing.

But there seems to be no good reason why he should be compelled, at the plaintiff's instance, to part with whatever title he may have to the half of the farm upon which she has no claim, unless she is compelled to pay the whole of the mortgage debt to relieve her half from the incumbrance. If her request is complied with, it would seem that the respondent, holding a quitclaim deed from Fifield Mitchell, would stand in the same position as to the right of redemption which she now holds, and have a right to redeem from her, and so on in endless succession. Such a result would be futile.

All that equity can require of the respondent seems to be that he should release her undivided half from the mortgage, on her paying half the amount of the mortgage debt remaining due.

It remains to be determined whether a decree to that effect can properly and safely be made between the parties now before the court.

Fifield Mitchell, after having made one mortgage of an undivided half of the farm to the respondent, subject to the one here to be redeemed, to obtain further advances from him, gave him a quitclaim deed of all his interest in the premises, taking back an agreement (not under seal) to re-convey upon payment of certain sums, at specified times, which have not been paid. This last transaction did not amount to a mortgage. *Jewett* v. *Bailey*, 5 Maine, 87. *French* v. *Sturdivant*, 8 Maine, 246. *Purrington* v. *Pierce*, 38 Maine, 447.

By Fifield's deed his legal title, interest and estate passed to and rested in the respondent. Has he, nevertheless, such an equitable interest therein, or is he so situated in relation to the property and this controversy, that he ought to be made a party to these proceedings before a final decree is passed?

The general rule touching such questions is thus stated in 2 Story's Eq. Jur. 745, § 1526: "The direct and imme-

diate parties having a legal interest are those only who can be required to be made parties in a suit at law. But courts of equity frequently require all persons who have remote and future interests, or equitable interests only, or who are directly affected by the decree, to be made parties, and they will not, if they are within the jurisdiction and capable of being made parties, proceed to decide the cause without them.

" It is the great object of courts of equity to put an end to litigation ; and to settle, if possible, in a single suit, the rights of all parties interested or affected by the subject matter in controversy."

Prior to the Statute of 1874, c. 175, giving this court full equity jurisdiction, Fifield Mitchell could not have been regarded as having an equitable interest in this matter according to the doctrine laid down in *Richardson* v. *Woodbury*, 43 Maine, 206, 210, 211.

But the reason assigned in the last named case, and in the cases therein cited and commented upon, why the court could not regard a deed absolute and unconditional in its terms, but made in fact to secure the payment of a loan, as a mortgage, was " the limited equity power of the court."

The remark of Whitman, C. J., in *Thomaston Bank* v. *Stimpson*, 21 Maine, 195, that " no doubt can be entertained that a court, having general equity jurisdiction, would regard such a conveyance as a mortgage," is quoted with apparent approval.

*Cessante ratione, cessat etiam lex.* Under the present statute the court has power to recognize the true character of Fifield Mitchell's quitclaim deed to the respondent. The whole course of dealing between said Mitchell and Jewett shows that it was never designed by them that Jewett should hold this farm (said to be worth $4,000), except as security for the moneys that he let Mitchell have to the amount, as he stated it, of $1,225.

The testimony of the respondent that, " as the time expired, I told him to go to work and keep the farm up, and I would wait on him. If he wanted to redeem, I would wait on him and give him a chance. He has been in possession of the place ever since under me," shows how the respondent regarded it, and that he did not consider time as of the essence of his contract to re-convey upon payment of sums found due.

Fifield Mitchell apparently has an equitable interest in the premises liable to be affected by the decree for redemption in favor of the plaintiff, and ought to be made a party to the proceeding for that reason.

Moreover, he should be made a party in order to accomplish what is said to be " the great object of courts of equity," the settlement in one suit of the conflicting claims of all parties concerned in the subject matter, thus putting an end to litigation respecting it. Fifield Mitchell appears to be still in possession of the farm, doubtless not only claiming a right to redeem from the mortgage and conveyance, held by Jewett, but denying any breach of the conditions of the deed from Eliza Mitchell to him.

Unless he is made a party to this suit another action at law between the plaintiff and him, for the possession, is inevitable. So long as he is not a party here, should he redeem from Jewett, the question as to the breach of the conditional deed must still be regarded as open to him.

In *Grant* v. *Duane*, 9 Johns. 611, Thompson, J., says, speaking of those who were claiming a right to redeem, " it cannot be allowed to them to speculate upon the claims of others, and redeem at their peril, and then litigate with those who may have the right." Whether this right of redemption which the plaintiff claims really belongs to her or Fifield Mitchell must be definitely settled here and now between them, in a manner that will preclude further litigation between said Fifield and either of the present parties.

It is true that apparently all which Fifield Mitchell could present bearing upon the questions here discussed is before us. These parties agreed to make the testimony in the suit at law brought against said Mitchell and Jewett, in which the testimony of the defendants was received and a large mass of evidence pro and con touching the question of a breach of the conditions of the deed of David and Eliza to Fifield Mitchell was presented and canvassed by the counsel of said Mitchell, a part of this case.

But until he has been regularly made a party to this suit it can not be judicially known that he has nothing more to urge to defeat the plaintiff's claim and no decree touching his right and

interest can or ought to pass. The control of that interest acquired by Jewett, though absolute according to the terms of the conveyance, is not final and complete, but subject to be defeated by a bill in equity and redemption.

Unless Fifield Mitchell is able to exhibit some substantial ground of objection the bill will be sustained and a master appointed to ascertain the amount remaining due upon the mortgage debt ; and the ultimate decree will be, that upon the payment by the plaintiff to the defendant Jewett of one-half the sum remaining due on said mortgage, the said Jewett and the said Fifield Mitchell shall release and convey to the plaintiff by deed duly executed all their right, interest, title and claim in and to one undivided half of the farm described in the bill with covenants of warranty against all persons claiming or to claim by, through or under them or either of them.

> *Remanded to nisi prius for further proceedings in conformity herewith.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.