Frederick V. PERKINS and Patricia
C. Perkins

v.

George L. PENNEY and Betty
J. Penney.

Supreme Judicial Court of Maine.

May 25, 1978.

Locke, Campbell & Chapman by Nicholas M. Lanzilotta, Augusta (orally), for plaintiffs.

Smith & Stein by Jeffrey A. Smith, Hallowell (orally), for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

On October 20, 1976, plaintiffs Frederick V. Perkins and Patricia C. Perkins commenced a civil action in the Superior Court (Kennebec County) against defendants George L. Penney and Betty J. Penney. Count I of plaintiffs' complaint sought specific performance (or, in the alternative, damages for breach) of an alleged "agreement in the nature of a bond for a deed" concerning defendants' dairy farm comprising approximately 260–270' acres of real estate in Belgrade, Maine.

After completion of the pleadings and the filing of affidavits, plaintiffs moved for summary judgment in their favor. On February 23, 1977 the Justice presiding in the Superior Court granted the motion and ordered entry of judgment that defendants specifically perform the agreement by conveying "by good and sufficient deed, a merchantable title to the premises described in paragraph # 1 of the land sales contract

between the parties." Defendants have appealed from this judgment, as entered.[1]

We deny the appeal.

The agreement which is the subject of this case was made by the parties in November, 1970. Defendants agreed to convey "by good and sufficient deed a merchantable title" to their dairy farm upon payment in full of an unsecured promissory note signed by plaintiffs in which plaintiffs promised to pay the designated purchase price of the dairy farm in monthly installment payments. Plaintiffs had the

> "right to anticipate and pay any and all installment payments at or before the time the same shall become due except that there shall be no anticipation before January 1, 1971."[2]

A separate instrument incorporated by reference in the sale-purchase agreement provided, as here relevant, that:

> "(2) Perkins agrees to carry on and work said property as a dairy farm properly planting and harvesting all crops necessary for the operation of said farm and properly care for said dairy and operate in a good farm-like manner in acceptable practices of good husbandry, and further agrees that no green growing or standing timber or wood shall be cut or carried away from the farm except such as may be necessary for repairs of the buildings on the farm or for other use on the farm without the Penneys' prior written consent.
>
> "(3) Perkins shall be responsible for all maintenance and repairs on the property except usual wear and tear . . . and all repairs shall be done in a good and workmanlike manner in compliance with

all applicable laws . . . and [Perkins] shall maintain insurance on the premises for the coverages presently held by Penney and pay all premiums therefor.

> "(4) Perkins shall not make any alterations, additions, or other modifications to the buildings on said premises except for minor changes neither reducing the value of the buildings nor impairing their structural strength without on each occasion first obtaining Penneys' written consent.
>
> \*     \*     \*     \*     \*     \*
>
> "(6) It is mutually agreed that time is of the essence in this contract and that in the event Perkins shall fail to pay any of the monies due by virtue of this contract or perform any of the other obligations herein the said Penney shall foreclose this agreement according to law and may also proceed against said Perkins for breach of this contract or enforcement thereof."

On September 15, 1976, defendants filed a "declaration" in the Kennebec County Registry of Deeds and sent a copy to the plaintiffs. It stated that plaintiffs had violated the terms and conditions of the agreements of November 1970, and by virtue thereof defendants were no longer obligated to convey the realty to plaintiffs, plaintiffs' breach having caused any such prior obligation to be null and void.

In their answer and affidavits in response to plaintiffs' motion for summary judgment, defendants asserted that on at least four occasions after November 1970 plaintiffs had been notified that defendants claimed that plaintiffs had violated provisions of the agreement. Defendants de-

---

1. Plaintiffs' complaint also set forth separate counts for damages for lost profits and the intentional infliction of mental distress. In addition, defendants brought a counterclaim for waste, other expenses and damages and for a declaration of the rights of the parties in the property and, in particular, for a declaration that the agreements were void and that defendants' obligation was terminated as a result of the breach by plaintiffs. Although the Superior Court did not enter judgment on these claims, the summary judgment on Count I is properly before this Court as a "final" judg-

ment. The Superior Court expressly ordered that "[t]here being no just reason for delay, it is ORDERED that this be a final judgment as to Count I and final judgment thereon be entered by the Clerk on the docket." See Rule 54(b), M.R.Civ.P.

2. The purchase price of $64,000 (plus 7% interest) was to be paid in installments of $373.33 per month in November and December 1970 and $500 a month thereafter. In addition, $4,000 of the principal was to be paid in the first half of 1971.

scribed these asserted breaches as plaintiffs' failure to repair, maintain and farm in a husbandlike manner and plaintiffs' making unauthorized alterations of the premises. However, defendants admitted that from November 1970 to September 15, 1976 plaintiffs had made all of the payments required under the terms of the promissory note.[3]

In their complaint, and the affidavits filed in support of their motion for summary judgment, plaintiffs stated that on October 4, 1976 they made a legal tender of the entire balance due on the note and have remained at all times ready, willing and able to pay said balance.

In their answer defendants denied that plaintiffs had made a tender of the unpaid balance of the note on October 4, 1976. However, defendants' affidavits assert only that no tender had been made before September 15, 1976, the date on which defendants filed the "declaration" as to breaches by plaintiffs. Before us, defendants have indicated that any defects in the manner of plaintiffs' making tender could be deemed eliminated, at least to the satisfaction of defendants, by having the judgment for specific performance (if such a judgment is held warranted) modified to require plaintiffs to make payment of the entire balance due on the note contemporaneously with defendants' giving a good and sufficient deed.

■ In these circumstances we decide that the presiding Justice acted correctly in ruling by summary judgment that plaintiffs had tendered the amount due on the note. Since the presiding Justice could have required, and we have the authority to require, that a judgment for specific performance specify that contemporaneously with defendants' giving a deed, plaintiffs pay the full amount due on the note, whatever facts may have been in dispute between the parties as to the manner of plaintiffs' making tender lose their character as issues of *material* fact. Rule 56 M.R.Civ.P.

We therefore address the question whether the tender made by plaintiffs was timely. This, in turn, resolves into the question of law whether the filing of the September 15, 1976 "declaration" in the Registry of Deeds terminated the right of plaintiffs thereafter to tender. The presiding Justice ruled that such a subsequent tender by plaintiffs would cure "any failure of plaintiffs to comply with collateral conditions in the sales contract." This was error, argue defendants, because the filing of the September 15th "declaration" constituted either a justifiable rescission of the sale-purchase agreement or a foreclosure of the "bond for a deed." On either of these alternatives, say defendants, a tender of the balance due on the note could not cure prior breaches by plaintiffs as to the repair, maintenance and farming of the dairy and the unauthorized alteration of the premises.

■ We find as a matter of law that plaintiffs were permitted to take possession of the property *solely* on the basis of their unsecured note and their promise to comply with the conditions of the agreement. Hence, we conclude that the separate conditions as to the upkeep and use of the dairy farm were not independently viable but operated merely as security to preserve the value of the realty for defendants should plaintiffs be unable to complete the installment payments.[4]

With the conditions under scrutiny thus characterized, we address defendants' arguments concerning the impact of the "declaration" filed by defendants on September 15, 1976.

3. Although some question is raised regarding the timeliness of some of the payments, defendants do not contend that this has legal significance in this case.

4. Defendants also raise a question concerning an alternative ruling by the presiding Justice that acceptance by defendants of plaintiffs' installment payments, including an installment payment allegedly made on October 3, 1976, constituted a waiver of any prior breaches of the conditions of the agreement. Since we held that plaintiffs' tender of payment in full is dispositive, we need not decide whether the "waiver" ruling was erroneously made as a summary judgment decision because genuine issues of material facts were involved.

■ We recognize that where a purchaser *fails to pay* his note after it has become due, in some instances the seller has the right "to request a strict compliance with the conditions of the bond and to enforce a forfeiture for breach of such conditions." *Niles v. Phinney*, 90 Me. 122, 124, 37 A. 880, 881 (1897). Since, however, we have here concluded that the breach of the agreement related only to conditions intended as security and not to the promise to pay the purchase price, in the instant circumstances equity will relieve the plaintiffs from a forfeiture of the land. Cf. *Rowell v. Jewett*, 69 Me. 293 (1879). Plaintiffs had paid over one half of the purchase price by September 15, 1976, see n. 2 supra, and had remained in possession of the premises for almost six years. Less than one month after defendants' filing of the "declaration" plaintiffs, who apparently continued to remain in possession after the "declaration" was filed, offered to pay the entire amount due on the note. The agreement specifically provided that plaintiffs had the right to anticipate and make any and all payments in advance. In view of these considerations and because the conditions in breach were not independent of the promise to pay, we conclude that the plaintiffs were entitled to a reasonable opportunity to make payment in full before the September 15, 1976 "declaration" could have the legal effect of being a rescission of the sale-purchase agreement. Since, here, plaintiffs offered to make payment in full within a reasonable time after the filing of the "declaration", no justifiable rescission of the contract had occurred.

■ This brings us to defendants' alternative contention that the declaration operated as a foreclosure of the "bond for a deed" or contract for sale of realty. 14 M.R.S.A. § 6203–F provides:

"If the purchaser of real estate under a contract for the sale of real estate, including a bond for a deed, shall be in default of any of the terms of such contract, the seller, his heirs or assigns may foreclose the rights of the purchaser in said contract by any of the means provided by law for the foreclosure of mortgages, except that the redemption period shall be 60 days."

Under these provisions defendants' recording of the "declaration" and sending a copy to the plaintiffs were not sufficient to constitute a foreclosure of the bond for a deed. Such action was not the equivalent of "any of the means provided by law for the foreclosure of mortgages." Foreclosure without possession under 14 M.R.S.A. § 6203, for example, requires service of an attested copy of the notice of foreclosure upon the party in default. Defendants have not shown that they caused an. *attested* copy of the notice to be *served* upon the plaintiffs in accordance with § 6203. Moreover, the September 15, 1976 "declaration" fails to indicate that it is to operate as a notice of foreclosure.

■ The filing of the September 15, 1976 "declaration" was thus neither a justifiable rescission of the agreement nor a valid foreclosure. Since under the 1970 agreement plaintiffs have the right to make all of the payments in advance of the date due under the agreement, plaintiffs are entitled to specific performance of the agreement should plaintiff make such advanced payment of the entire balance due.

The entry is:

Appeal denied.

Judgment affirmed, as modified to provide that defendants' conveying by good and sufficient deed shall be contemporaneous with plaintiffs paying to defendants the entire balance due on their note to defendants.

Costs on appeal awarded to plaintiffs.