**Clyde A. ROTH and Ann Roth**

v.

**Lawrence MALMSTEN.**

Supreme Judicial Court of Maine.

June 2, 1978.

Berman, Berman & Simmons, P. A. by Gary Goldberg (orally), Lewiston, for plaintiff.

Locke, Campbell & Chapman by Nicholas M. Lanzilotta (orally), Augusta, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

The Superior Court granted summary judgment for the plaintiffs on pleadings and affidavits disclosing the following facts: On January 15, 1972, plaintiffs Clyde and Ann Roth entered into a written agreement to rent certain real property in the town of Winthrop to appellant Lawrence Malmsten. By the lease agreement, the Roths leased the premises to Malmsten for fifteen years for an annual rent of $2,500 payable in monthly installments. The lessee promised to insure the property, pay taxes and assessments on it, and maintain the building and appurtenances in good condition. By agreement Malmsten also received "the right at his option anytime within the Fifteen (15) Years of this lease to purchase for $25,000.00 the property herein leased."

In November, 1975, the Roths filed one complaint for declaratory judgment and another for forcible entry and detainer, charging that Malmsten had breached the lease agreement by failing to make monthly rental payments and by failing to insure and pay taxes on the leased property. The complaints sought money damages, possession of the property, and issuance of a court decree terminating all rights or interest defendant might have had in the property, including his option to purchase it. Malmsten admitted that he had failed to make monthly payments under the lease agreement but answered that the option to purchase was not immediately terminated upon nonpayment of rent. Alternatively he

asserted that his breach for nonpayment had been condoned and his option to purchase revived by an agreement entered into by the parties on August 14, 1975, two months after the alleged breach.

With the case in this posture and with the two actions consolidated for trial, the plaintiffs moved for summary judgment under Rule 56(c) M.R.Civ.P. After considering the pleadings, affidavits and depositions of the parties, the presiding justice granted plaintiffs' motion for summary judgment in both actions. Defendant appeals from the court's decree that

". . . all right, title and interest which the Defendant may have had in the subject premises under Lease dated January 15, 1972 be and is hereby terminated, it being the determination of this Court that Defendant failed to comply with the provisions of said Lease and that Defendant's right, title and interest in said realty, by way of Lease or option contained therein, be and is hereby extinguished; said Lease having been terminated by the actions of the Defendant in failing to comply with the terms thereof."

## I. *Severability of the Option to Purchase*

■ Appellant cites *Akerley v. Lammi*, Me., 217 A.2d 396 (1966), for the proposition that when the intent of contracting parties is undetermined, an issue of fact is presented which renders summary judgment unavailable. Appellant contends that the option term in the Roth-Malmsten agreement was intended by the contracting parties to be independent of, and severable from, the other terms of the rental agreement. On that theory, appellant's breach of his duty to make monthly rental payments might have terminated his right to occupy the property as a lessee but did not extinguish his right to demand sale of the Roth property at any time within fifteen years after the contract was entered into. It is appellant's view that the intention of the parties regarding the exercise of the option after nonpayment of rent presented a genuine issue of fact that precluded the entry of summary judgment.

When contracting parties have sought to reduce their agreement to writing and that writing is incomplete or ambiguous on its face, a trier of fact may look to parol evidence as an aid in interpreting the instrument. *Lewiston Firefighters Association v. City of Lewiston*, Me., 354 A.2d 154, 163 (1976). However, where the instrument appears on its face to integrate completely the understanding of the parties, and does so in unambiguous language, the intent of the parties is established by the instrument alone, so that, without reformation of the instrument, parol evidence may not be introduced over objection to prove that the language should be understood as having some extraordinary meaning. Appellant did not assert that the written agreement in question did not fully and correctly integrate the understandings of the parties.

The contract contains seven paragraphs establishing the various rights and duties of the respective parties. Appellant's duty to make monthly rental payments and his right, at his option, to purchase the leased property are provided for in the same paragraph and in consecutive sentences. Appellant's option power is neither open-ended, in terms of duration, nor absolute, but is expressly limited to ". . . the Fifteen (15) Years of this Lease." In the absence of anything in the lease suggesting the contrary, this language means that the appellant's right to purchase was concurrent with the lessor-lessee relationship. It follows that the continuing existence of that relationship was a necessary condition for the continuance of the right to purchase.

We are not called upon to decide whether the option terminated immediately upon breach of the lease agreement or whether the breaching lessee might have had a reasonable time to exercise the option even after breach. In this case it does not appear that appellant attempted to exercise the option within a reasonable time after breach.

There being no genuine issue of fact as to the parties' intent, summary judgment was properly entered for the plaintiffs.

## II. *The Agreement of August 14, 1975*

Appellant claims that despite the breach of his duties as lessee his option to purchase under the 1972 contract was revived, or a new option right was created, by a second agreement reached between him and the Roths on August 14, 1975, two months after the original contract was breached. Appellant rests his new, or revived, option right exclusively on this later written "agreement". He does not assert the existence of any independent oral contracts.

The "agreement" relied upon by appellant is, in fact, a letter sent by the Roths and Malmstens to the Small Business Administration seeking the aid of that agency and the Dirigo Bank and Trust Company in effectuating a proposed sale of the disputed property to Malmsten by the Roths. It is not clear whether the signatories to this letter sought further financing from the Small Business Administration, but it is apparent that the agency did hold an existing mortgage on the property. In the letter, the Roths sought to have that mortgage subordinated to a purchase-money mortgage which they hoped to take back on a sale to Malmsten. As part of the proposed arrangement, the Roths also wanted to be relieved from any and all liability to Dirigo Bank.

The August 14 "agreement" is silent as to any prior agreement or arrangement between the Roths and Malmsten. It makes no reference to any breach of the 1972 lease agreement. It does not purport to revive rights that had already terminated. The position of the respective parties vis-à-vis the 1972 lease and option agreement was unaffected by the letter of August 14, 1975. In order for appellant to prevail in his assertion that he held an existing right or interest in the Roth property at the time summary judgment was entered against him it must, therefore, be established that through the August 14 "agreement" he acquired some new right in the property.

It is apparent from the face of the letter, however, that the "agreement" contained therein was in fact a proposed four-party transaction and that whatever understandings there may have been between appellant and the Roths were conditioned on the aid and assent of the Small Business Administration and Dirigo Bank. The opening paragraph expressly states that the arrangements proposed in the letter are the "tentative positions" of the signatories. At the bottom of the writing, beneath the signatures of the Roths and Malmstens are spaces for two additional signatures.

"Seen and Agreed to by the Small Business Administration.

By _____

Seen and Agreed to by the Dirigo Bank and Trust Company.

By _____ "

Both signature lines are blank. Neither in his pleadings nor in his affidavit in opposition to the motion for summary judgment does appellant aver that the Small Business Administration agreed to the proposal or that the Dirigo Bank even saw the letter of August 14, 1975. By its form and content the August 14 letter establishes that without the aid and assent of the Small Business Administration and Dirigo Bank the "tentative positions" of the appellant and the Roths were to remain conditional and nonbinding. The presiding justice ruled correctly that appellant has no present right or interest in the premises. Summary judgment for the plaintiffs was properly granted.

The entry is:

Appeal denied.

Judgment affirmed.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

POMEROY, WERNICK, ARCHIBALD, DELAHANTY, JJ., and DUFRESNE, A. R. J., concurring.