STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CRIMINAL ACTION
                                                  DOCKET NO: RE-07-273

BENJAMIN H. HUFFARD and
BRONWYN HUFFARD

         Plaintiffs

         v.                        RECEIVED         ORDER

ROBERT HIRSHON and
ROBERTY HIRSHON,

         Defendants

This case comes before the Court on Plaintiffs' motion for summary

judgment, made pursuant to M.R. Civ. P. 56, on their single claim requesting specific

performance and on all counterclaims asserted by Defendants.

BACKGROUND

The material facts in this case are undisputed. By Warrant Deed, dated

February 20, 1979, Defendants Robert and Roberta Hirshons (herein "the Hirshons")

acquired a certain parcel of real property located at 3 Oakhurst Road in Cape

Elizabeth, Maine. Plaintiffs' Statement of Material Fact (SMF) ¶ 1. Some time before

listing the property for sale, the Hirshons divided the property into two parcels: one

containing the actual house (Lot 1)[1], and the other containing the remaining land

(Lot 2).[2] Defendants' Additional Statement of Material Fact (ASMF) ¶¶ 1, 3. On or

about May 30, 2007, the parties entered into a Purchase and Sale Agreement

whereby the Hirshons agreed to sell Lot 1 to the Huffards for $910,000. SMF ¶ 6;

Exhibit 2. In addition to agreeing to sell Lot 1 to the Huffards, the Hirshons also

---

[1] Lot 1 consists of .74 acres of land. ASMF ¶ 1; Plaintiffs' Reply to Additional Statement of
Additional Fact (RSMF) ¶ 1.
[2] Lot 2 consists of .67 acres of land. ASMF ¶ 1; RSMF ¶ 1.

the Hirshons also agreed to grant to the Huffards an irrevocable four-year option to purchase Lot 2 for $325,000. SMF ¶ 6; Exhibit 2.

On or about August 1, 2007, the parties closed on the real estate purchase and sale contract for 3 Oakhurst Road. SMF ¶ 7. The Huffards paid the purchase price for Lot 1 and the Hirshons delivered a Warranty Deed conveying Lot 1 to the Huffards. SMF ¶ 8. At this time, the parties executed an Option Agreement, which, like the Purchase and Sale Agreement, granted the Huffards an exclusive and irrevocable four-year option to purchase Lot 2 for $325,000. SMF ¶ 8; Exhibit 3, Exhibit 4. Paragraph 8 of the Option Agreement states:

> If the Buyer desires to landscape, or otherwise improve [Lot 2] prior to their exercise of the Option, then Buyer shall submit to Seller, in form and substance satisfactory to Seller, written detail of any such improvement and the Seller may, in their sole discretion, approve any or a part thereof for such improvements.

SMF 11; Exhibit 4. Further, Paragraph 6 of the Option agreement states:

> In the event of any default by Buyer under this Agreement, Seller may retain the Option payments and pursue any other legal and/or equitable remedies against Buyer. In the event of default by the Seller of this Agreement, the Buyer shall have any and all remedies available at law or in equity, including but not limited to the right to seek specific performance of the provisions of this Agreement.

Exhibit 4. [3]

At some point after the Huffards closed and took possession of Lot 1, they entered onto the adjacent lot, Lot 2, and removed debris and refuse, cut down and removed saplings and trees, and removed an amount of firewood from the

---

[3] The Hirschons would not have agreed to allow any option in connection with Lot 2 absent these provisions because they knew that, under the Option Agreement, the Huffards were not obligated to purchase Lot 2 and that any landscaping or other changes to Lot 2 could interfere with the Hirshons' use of Lot 2 should the Huffards not exercise their option to purchase it. ASMF ¶ 18.

premises.[4] SMF ¶ 12; ASMF ¶ 19. The Huffards did not seek or receive permission from the Hirshons to enter or improve Lot 2. SMF ¶ 13.

On October 17, 2007, pursuant to the Option Agreement, the Huffards provided the Hirshons with written notice that they were exercising their option to purchase Lot 2 and a $10,000 check deposit. SMF ¶ 14. By letter dated October 22, 2007, Attorney David Hirshon, acting as agent for the Hirshons, returned the Huffards check and informed them that his clients had terminated the Option Agreement based on the fact that the Huffards had defaulted under the Option Agreement by "improving the subject property [Lot 2] without written consent from" the Hirshons. SMF ¶ 15.

On October 31, 2007, the Huffards filed a complaint asking this Court to order the Hirshons to specifically perform their obligation and convey Lot 2 in accordance with the Option Agreement. On January 7, 2008, the Hirshons filed their answer, denying all material allegations in the Huffards' complaint and raising several affirmative defenses. In addition, the Hirshons also allege five counterclaims against the Huffards.[5]

On January 23, 2009 the Huffards filed the present motion for summary judgment. They ague that, as there are no genuine issues of material fact, and their breach of Paragraph 8 was not a material one, as a matter of law, they are

---

[4] While it is not disputed that the Huffards entered onto Lot 2 and removed certain flora and firewood, the amount of damage caused to the property by their work, and the quality and quantity of firewood removed from Lot 2 is disputed. SMF ¶ 13; ASMF ¶ 19. It is also undisputed that the Huffards cleared space on Lot 2 for a jungle gym, placed the jungle gym partially on Lot 2, and further, constructed a "zip line" running across Lot 1 to Lot 2 for the use and enjoyment of their children. ASMF ¶ 20.

[5] In addition to asking this Court for a declaration of the parties' rights under the Option Agreement, the Defendants counterclaim (Count II) intentional or knowing injury to land pursuant to 14 M.R.S.A. § 7552, (Count III) negligent injury to land pursuant to 14 M.R.S.A. § 7552, (Count IV) trespass pursuant to 14 M.R.S.A. § 7551-B, and (Count V) punitive damages.

3

entitled to specific performance of the Option Agreement. Further, they move for summary judgment on all of the Hirshons' counterclaims, arguing that any damages alleged by the Hirshons were rendered moot when the Huffards exercised their option to purchase Lot 2. The Hirshons oppose the motion for summary judgment, arguing that, by entering and improving Lot 2, the Huffards committed a material breach of the Option Agreement, thereby terminating it.

ANAYSIS

I.      Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); see also *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A court may properly enter judgment in a case when the parties are not in dispute over the [material] facts, but differ only as to the legal conclusion to be drawn from these facts." *Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994). Here, there are no genuine issues of material fact. The only issue on which the parties disagree is whether the Huffards' violation of the Option Agreement terminated it.

II.     Should the Option Agreement Be Enforced Allowing the Huffards to Exercise Their Option to Purchase Lot 2?

A.      Did the Huffards' Violation of the Option Agreement Constitute a Material Breach?

4

A material breach of contract occurs when a party to a contract fails to perform a "duty so material and important [to the contract] as to justify the injured party in regarding the whole transaction as at an end." *Jenkins, Inc. v. Walsh Brothers*, Inc., 2001 ME 98, ¶ 13, 776 A.2d 1229, 1234.

The Huffards cite to *Perkins v. Penney* to support the contention that their improvements to Lot 2 did not constitute a material breach. 387 A.2d 205 (Me. 1978). In *Perkins*, in addition to the parties entering into an installment-purchase land sale contract, they also entered into a separate "upkeep and use" agreement that prohibited the buyer from altering, adding, or modifying the lot without prior written approval from the sellers. *Id.* at 207. At some point, despite the fact that buyers were making timely payments under the installment contract, the sellers attempted to terminate the contract based, among other things, on the buyers' unauthorized alterations of the property. *Id.* at 207-208. At some point, the sellers filed a declaration in the local registry of deeds stating that, based on the buyers' breach, the installment contract was null and void. However, at the point the sellers filed this declaration, the buyers had already tendered the full amount required under the terms of the promissory note. *Id.* at 207.

In finding that the buyers did not commit a material breach, the Law Court held that the "no-alter" clause of the contract "operated merely as security to preserve the value of the realty for defendants should plaintiff be unable to complete the installment payment." *Id.* at 208. Thus, because there was no material breach, and because the buyers had already tendered the full payment required under the note, the sellers were ordered to convey the deed to the buyers. *Id.* at 209.

5

The Hirshons argue that the facts in *Perkins* are too distinct from the facts presented here, but concede that the separate upkeep and use agreement in *Perkins* was "not independently viable" from the land sale contract because it operated as a means to preserve the value of the property. Instead, the Hirshons argue that *Roth v. Malmsten* is more akin to the facts presented here. 387 A.2d 234 (Me. 1978).

There, the parties entered into an agreement whereby the sellers leased the property to the buyer "for fifteen years for an annual rent of $2,500 payable in monthly installments. . . By agreement [the seller] also received 'the right at his option anytime within Fifteen (15) Years of this lease to purchase for $25,000.00 the property herein leased.'" *Id.* at 234. At some point, the buyer stopped making monthly rental payments, and based on this breach, the sellers brought an action seeking a declaratory judgment terminating the lease and the option agreement. *Id.* The Law Court, in looking at the agreement, affirmed the lower court's grant of summary judgment to the sellers, finding that the buyer's failure to pay rent was material because the existence of a lessor-lessee relationship, and thus the right to lease, was a necessary condition to the right to purchase. *Id.* at 235. Therefore, because the buyer lost the right to lease, he also lost the right to purchase. *Id.*

*Roth* is unhelpful to our analysis. While the Hirshons are correct in asserting that the general holding of *Roth* is that a holder's failure to abide by a related lease provision can void a purchase option, it must be remembered that, there, under the plain language of the separate option agreement, the lease still had to be in force when the buyer elected to exercise his option. Therefore, a

failure to pay rent, and thereby continue the lease term, was the most material of breaches.

However, despite the fact that the agreements in *Perkins* are different from the one present here, for purposes of this analysis, these are differences without distinction. As stated by the Hirshons, the "no-alter" provision of the Option Agreement was meant to prevent changes to Lot 2 that could affect the value and subsequent use of the land if the Huffards opted not to exercise their purchase option.[6] As such, like the "no-alter" provision at issue in the agreement in *Perkins*, this provision "operated merely as security to preserve the value of the realty for" the Hirshons should the Huffards not purchase Lot 2.

Therefore, under the facts presented here, and consistent with the Law Court's finding in *Perkins*, this Court finds that the Huffard's violation of the "no-alter" provision of the Option Agreement was not material because they opted to exercise the option to purchase Lot 2, thereby extinguishing any concern the Hirshons had for the condition, and thus the value, of Lot 2.

B.    Unclean Hands

The Hirshons insist that because the Huffards violated the "no-alter" provision of the Option Agreement, they have unclean hands and cannot now seek enforcement of the Option Agreement. Under the clean hands doctrine, "one who comes into court of equity must come with clean hands." *Hamm v. Hamm*, 584 A.2d 59, 61 (Me. 1990). Further:

> It is an elementary principle of equity jurisprudence that "whenever a party who as actor seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience or good faith, or other equitable principle in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to

---

[6] See ASMF ¶ 18.

7

> interfere on his behalf, to acknowledge his right or to award him
> any remedy."

*Id.* (quoting 1 Pomeroy, Equity Jurisprudence § 397 (3d ed. 1905). Application of

the clean hands doctrine is within the sound discretion of the court. *Precision*

*Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 815, 65 S. Ct.

993, 89 L. Ed. 1381 (1945). However, "[t]he touchstone of determining whether the

[court] has properly exercised its discretion is whether in a given case that

discretion is exercised 'in furtherance of justice.'" *Gagne v. Cianbro Corp.*, 431 A.2d

1313, 1318 (Me. 1981) (quoting *Fitch v. Whaples*, 220 A.2d 170, 173 (Me. 1966)).

While it is admitted that the Huffards violated the "no-alter" provision of

the Option Agreement, because the Huffards ultimately decided to exercise their

option to purchase the land, thereby mooting any damage to the property, in the

furtherance of justice, the doctrine of unclean hands should not be applied.

C.     Conclusion

Because the Huffards did not commit a material breach of the Option

Agreement, and because justice does not require the application of the unclean

hands doctrine, the Hirshons are hereby ordered to specifically perform under the

agreement and convey Lot 2 to the Huffards in accordance with the Option

Agreement.

III.     Counterclaim Counts II and III, Injury to Land

Under Section 7552(2)(A), a person may not, without permission from the

owner, "cut down, destroy, damage or carry away any forest product, ornamental

or fruit tree, agricultural product, stones, gravel, ore, goods or property of any

kind from land not that person's own." Counterclaim Count II alleges that the

Huffards intentionally or knowingly caused such injury, whereas Count III

alleges that the Huffards negligently caused such injury. For negligently caused

8

injury, the injured party is entitled to two times the owner's damages as measured under subsection 3 or $250, whichever is greater. 14 M.R.S.A. § 7552 (4)(A). For intentional or knowing injury, the injured party is entitled to three times the owner's damages as measured under subsection 3 or $500, whichever is greater. 14 M.R.S.A. § 7552 (4)(B). Under subsection 3, damages are limited to actual damage or can be based on diminution of property. 14 M.R.S.A. § 7552(3).

As it is undisputed that the Huffards went onto Lot 2 and removed flora and firewood and cut down trees and saplings, summary judgment in favor of the Huffards, as to Counterclaim Counts II and III, should be denied.

IV.     Counterclaim Count IV, Trespass to Land

Under 14 M.R.S.A. § 7551-B(1), "[a] person who intentionally enters the land of another without permission" and causes damage is liable to the owner of the property in a civil action if that person:

> A. Damages or throws down any fence, bar or gate; leaves a gate open; breaks glass; damages any road, drainage ditch, culvert, bridge, sign or paint marking; or does other damage to any structure on property not that person's own; or
> B. Throws, drops, deposits, discards, dumps or otherwise disposes of litter. . . in any manner or amount, on property not that person's own.

Because there are no allegations that the Huffards committed any of the acts described in Section 7551-B(1), there are no genuine issues of material fact, and as such, summary judgment on counterclaim Count IV is appropriate.

V.      Count V, Punitive Damages

In order to receive punitive damages, the Hirshons must show that the Huffards acted with malice. *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985). The requirement of malice will be most obviously satisfied by a showing of "express" or "actual" malice. *Id.* Such malice exists where the defendant's tortious

9

conduct is motivated by ill will toward the plaintiff. *Id.* (citing *H & R Block, Inc. v. Testerman*, 275 Md. 36, 43, 338 A.2d 48, 52 (1975)).

While it is true the Huffards trespassed on Lot 2 before exercising their option, it cannot be said that their conduct was motivated by anything other than their wish to improve the land before exercising their option to purchase the land, and was not motivated by ill will towards the Hirshons. Further, while it could be said that the Huffards committed a willful violation of the Option Agreement, it has been held by the Law Court that "[n]o matter how egregious the breach, punitive damages are unavailable under Maine law for breach of contract." *Stull v. First Am. Title Ins. Co.*, 2000 ME 21, P17, 745 A.2d 975, 981. As such, the Huffards should be granted summary judgment on the issue of punitive damages.

## Therefore, the entry is:

Plaintiff's motion for summary judgment on their Complaint is hereby GRANTED. Lot 2 must be conveyed to the Huffards in a manner consistent with the Option Agreement.

Plaintiff's motion for summary judgment on Counterclaims IV (Trespass to Land) and V (Punitive Damages) is GRANTED.

Plaintiff's motion for summary judgment as to Counterclaim Counts II and III (Intentional and Negligent Injury to Land) is DENIED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: _March 31, 2009_

Roland A. Cole
Justice, Superior Court

10

F COURTS
and County
Box 287
ne 04112-0287

THOMAS NEWMAN ESQ
PO BOX 9785
PORTLAND ME 04104

P|.

'F COURTS
and County
Box 287
ine 04112-0287

DAVID HIRSHON ESQ
PO BOX 15060
PORTLAND ME 04112

DM.